818 So.2d 181 (2002)
Dawn Guidry MONTZ
v.
Mary D. Pilcher, Wife of/and Nelvil L. THEARD, Sr.
No. 2001 CA 0768.
Court of Appeal of Louisiana, First Circuit.
February 27, 2002.
*183 Donald D. Bann, Mandeville, Counsel for Defendants/Appellants, Mary D. Pilcher Theard and Nelvil L. Theard, Sr.
Gary J. Williams, Slidell, Counsel for Plaintiff/Appellant, Dawn Guidry Montz.
Before: FOGG, KLINE[1], CIACCIO[2], JJ.
WILLIAM F. KLINE, Judge Pro Tem.
This is an appeal from a trial court judgment awarding $4,000.00 in general damages for the wrongful eviction of Dawn Guidry Montz from property subject to a contract regarding its purchase.

FACTS AND PROCEDURAL HISTORY
On February 5, 1996 Nelvil and Mary Theard executed an agreement to sell a residence in Covington, Louisiana to Dawn Guidry Montz along with an addendum calling for the sellers to make certain repairs to the property. Because Ms. Montz failed to qualify for a loan, the sellers agreed to finance the property themselves. A further Addendum was executed evidencing the intent of the parties to complete the transaction in the format of a Bond for Deed. That addendum noted:
"ACT OF SALE" is hereby changed to "ACT OF BOND FOR DEED."
During preparation of the closing papers for the transaction, the closing attorney discovered that the residence was already encumbered by a first mortgage that contained a "due on sale" clause.[3] He advised the parties that the originally contemplated Bond for Deed transaction could not be executed without activating the "due on sale" clause, a result the parties did not desire. In an attempt to complete the transaction without activating the clause, the closing attorney prepared a series of documents that he believed would serve the interests of the parties and achieve the desired result. The parties executed the closing documents on March 29, 1996.
The Theards completed most but not all of the repairs they agreed to make to the property. After making the initial "down payment" of $8,000.00 and several installment payments, Ms. Montz stopped making timely payments and she was notified repeatedly that she was in default. The sellers eventually gave a final formal notice of default and filed a notice of cancellation *184 of the transaction in the conveyance office of St. Tammany Parish, all in accordance with the terms and provisions of the agreements executed by the parties. Thereafter, the sellers filed a Petition of Eviction on June 30, 1999. A Judgment of Eviction was rendered after a contested proceeding and Ms. Montz was ordered to vacate the residence. The Theards declined her request to return the down payment, subsequent installment payments, and various other amounts expended in connection with the property. The record of the proceeding before the Justice of the Peace was not filed into evidence in this case. Ms. Montz timely filed a suspensive appeal from the eviction judgment but subsequently dismissed the appeal and that judgment became final.
Thereafter, Ms. Montz filed a separate suit for bad faith breach of contract and for the intentional tort of wrongful eviction. She did not allege that she was the title owner of the property. She claimed that the agreements executed in connection with the property constituted a disguised Bond for Deed transaction, pursuant to which title remained in the Theards until all payments had been made under the contract. She claimed that when the owners took back the property, she was entitled to reimbursement of the down payment, return of all monthly installment payments, repair expenditures, property taxes, and other amounts expended in connection with the property. She further claimed that the Theards' failure to tender those sums to her made the eviction wrongful and entitled her to her to damages. She also sought attorney's fees pursuant to the initial agreement to purchase and sell executed on Feb. 5, 1996.
The Theards answered plaintiff's petition and denied that the transaction was a disguised Bond for Deed. Instead, they argued that the transaction was a hybrid innominate contract designed to meet the needs of the parties without triggering the "due on sale" clause in the outstanding mortgage. However, like plaintiff, they took the position that under the agreements executed, they were to remain title owners to the property until all the contemplated installment payments had been made and other stipulations complied with. They asserted that they were justified in evicting plaintiff for non-payment of the installments and that they owed nothing to her under the penalty provisions of the agreements.
After a bench trial, the trial judge rendered a judgment in favor of Ms. Montz for $4000.00 for general damages for inconvenience, anxiety and moving expenses. His written reasons reflect that he rejected the characterization of the agreements by the parties to the transaction. Instead, he considered the parties to have entered into an agreement that constituted a conditional sale prohibited by Louisiana law that immediately transferred title to Ms. Montz, subject to a vendor's lien. Since he found that title had already passed to Ms. Montz, he deemed the eviction of the owner to be wrongful, although he believed it had been accomplished in good faith. His reasons further reflect his belief that the Theards would have to go through foreclosure proceedings to get title to the property back from Ms. Montz. Plaintiff moved for a partial new trial, which motion was denied.
Both parties appealed. Plaintiff claims the trial judge erred in characterizing the transaction as a prohibited conditional sale instead of a disguised Bond for Deed and in not awarding all of the damages she prayed for in her petition. Defendants claim the agreements executed by the parties constituted a valid innominate contract, although not a Bond for Deed, which did not transfer title and which contractually *185 provided for the appropriate consequence of default by the purchaser. Alternatively, defendants raised for the first time on appeal the peremptory exception of res judicata with respect to the portion of plaintiff's claim asserting damages for a wrongful eviction.

DISCUSSION
Resolution of the issues presented for our review depends on a determination of the nature and effect of the agreements executed by the parties. The proper interpretation of a contract is a question of law subject to de novo review on appeal. Total Minatome Corp. v. Union Texas Products Corp., 33,433, p. 5 (La.App.2d Cir.8/23/00), 766 So.2d 685, 689. When considering legal issues, the reviewing court accords no special weight to the trial court, but conducts a de novo review of questions of law and renders judgment on the record. Guillot v. Louisiana Gaming Control Bd., 98-1461, p. 2 (La.App. 1st Cir.10/26/99), 761 So.2d 561, 562.
There are three possible theories advanced for interpreting the contractual relationship between the parties and thus defining their rights, obligations and the legal consequences that ensue. The executed documents creating the relationship between the parties are, to wit:
1. A fully executed Cash Sale to be held in escrow until the installment purchase was completed.
2. An Escrow Agreement designating a commercial escrow agent to collect the installment payments. This document also stipulated the rights of the parties in the event of default by the purchaser.
3. An Agreement to Purchase/Sell that was to be recorded in the public records immediately and which provided that a sale would be executed in the future at a time agreed upon by the parties.
4. A Cancellation of Agreement to Purchase/Sell to be used in the event that the purchaser defaulted and the seller wished to cancel the transaction.

The Prohibited Sale/Immediate Transfer of Title Theory
The first theory we consider is the one adopted by the trial court. The trial judge's written reasons for judgment reflect his conclusion that the documents in question constitute a "Trust Deed arrangement of our common law brethren." He found:
These series of documents go so far afield of bond for deed and against the public policy against conditional sales, to characterize them as bond for deed should be seen as ludicrous. This is an obvious attempt to disregard public policy and must be characterized as what it in fact isa conditional sale.
The trial judge found support for his conclusion from the fact that the closing attorney who prepared the documents advised the parties that this transaction was not a Bond for Deed agreement, and it was crafted to avoid the U.S. Treasury Department regulations relative to "due on sale" clauses. The trial court further relied upon several cases involving conditional sales of movable property.[4]
The so called "conditional sale" of the common law is a contract by which the *186 possession of personal property is transferred under provisions reserving title in the transferor until payment of a specified amount of money (usually designated the `purchase price'). It is now well settled that a conditional sale of movable property is not possible under the laws of this state. However a distinction has been drawn with respect to conditional sales of immovables. In Trichel v. Home Ins. Co., 155 La. 459, 99 So. 403 (1924), our Supreme Court explained that with respect to movable property,
[T]he sale is complete between the parties by their mere consent, and as to the whole world by delivery. Hence where the thing sold has been delivered and there remains only to pay the price, it is quite immaterial what name the parties give to such price, rent, or what not, the fact remains that there has been a sale and transfer of ownership.

But with real estate the case is different; neither consent, nor delivery, nor payment of the price suffice to transfer the ownership; there must be a deed translative of titled. [Emphasis added] 99 So. at 404.
Even before the legislature first defined and regulated Bond for Deed transactions in 1934, such arrangements were being used as a vehicle to transfer real property on credit, with delivery of title withheld until full payment of all installments. Contracts for the conditional sale of immovables were recognized as valid "agreements to sell," not against public policy, even though possession was transferred immediately to the purchaser who undertook responsibility for taxes and insurance. Pruyn v. Gay, 159 La. 981, 106 So. 536 (1925). The jurisprudence made it clear that such contractual agreements did not effect a current transfer of title. Trichel v. Home Ins. Co., 99 So. at 404. In the early case of Dover v. Atlas Assur. Co. of London, England, 15 La.App. 132, 130 So. 828 (2d Cir.1930), the court quoting the Kansas Supreme court case of Pomeroy v. Aetna Ins. Co., 86 Kan. 214, 120 P. 344, 38 L.R.A. (N.S.) 142, Ann. Cas.1913 C, Page 170, stated:
While a deed is in escrow, awaiting the performance of conditions precedent to the delivery thereof by the vendor to the vendee, there is no change in the title or right of possession of the property, although the purchaser occupies it with the consent of the vendor in anticipation of completing the contract of sale and purchase. 130 So. at 834.
In view of the jurisprudence controlling arrangements like the one presented for our review, we respectfully cannot conclude that the contractual relationship of the parties in this case constituted a prohibited conditional sale that resulted in an immediate transfer of title. None of the parties viewed the documents executed at closing as sufficient to effect an immediate transfer.

The Disguised Bond for Deed Theory
The second approach urged for our consideration is plaintiff's argument that the documents executed constituted a thinly disguised Bond for Deed.
La. R.S. 9:2941 defines a Bond for Deed as:
a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer.
The Louisiana legislature first defined and regulated transactions of this nature in 1934 in order to protect purchasers from fraud, deceit and misrepresentation by the seller and to insure that payments made by a buyer are apportioned between the vendor and any mortgage holder in the *187 proportions agreed to by the parties. Scott v. Apgar, 238 La. 29, 113 So.2d 457 (1959); David Levingston, Comment, Bond for Deed Contracts, 31 La.L.Rev. 587 (1971). The Bond for Deed statute sets forth a number of particular directives the seller must comply with in a Bond for Deed transaction, such as appointment of a bank to receive payments from the purchaser, obtaining a guarantee to the purchaser from any mortgage holder that it will release the mortgage when it is paid in full, and a method for cancellation of the contract in the event of non-payment by the purchaser. La. R.S. 9:2941 et seq.
Our courts have routinely treated agreements similar to the one before us as Bond for Deed transactions, regardless of the characterization given them by the parties and even when the documents do not strictly follow all of the mandates of the statute. In Apgar, 113 So.2d at 459-460, the Louisiana Supreme Court made it clear that a contract can be treated as a Bond for Deed despite its failure to comply with certain particulars of the statute, especially where, as here, the party for whom the omitted protections are designed does not protest their absence. The label put on the transaction is not determinative. See Leinhardt v. Marrero Land and Improvement Ass'n Ltd., 137 So.2d 387 (La.App. 4th Cir.1962).
The Bond for Deed statute provides that if the purchaser fails to make payments in accordance with the terms and conditions of the contract and if nonpayment continues for 45 days after notice of default, the seller has a right to have the bond for deed cancelled by proper registry in the conveyance records. La. R.S. 9:2945. The bond for deed statute does not describe the vehicle whereby the seller is to regain possession in case of the purchaser's default. However, the plaintiff purchaser has not attacked the propriety of using eviction procedure and we do not consider the use of an eviction proceeding inappropriate. See Brown v. Weldon, 199 So. 620 (La.App. 1st Cir.1941). Upon statutory notice of default, the purchaser is not entitled to maintain possession.
A body of jurisprudence has established appropriate adjustments to be made in the case of a failed Bond for Deed transaction. Regardless of penalty or forfeiture clauses in the contract, the vendor in a Bond for Deed contract is not entitled to retain all monies paid by the purchaser. The law is clear that such forfeiture clauses should be regarded as null and void since they are inequitable, unreasonable and represent an illegal attempt to recover punitive rather than compensatory damages. Apgar, 113 So.2d at 460; Ekman v. Vallery, 185 La. 488, 169 So. 521 (1936); Gray v. James, 503 So.2d 598 (La.App. 4th Cir.1987); Thompson v. Bullock, 236 So.2d 892 (La.App. 3d Cir.), writ denied, 256 La. 894, 240 So.2d 231 (1970). The purchaser is entitled to the return of all moneys paid on the purchase price, including the down payment and monthly installments, the insurance premiums, and the taxes paid. The same body of jurisprudence establishes that the seller is entitled to an allowance for the fair rental value of the property during the period of plaintiff's occupancy and that a remand is appropriate where the rental value cannot be determined from the record. Gray v. James, 503 So.2d at 602, Thompson v. Bullock, 236 So.2d at 898.
Defendants attempted at trial to distinguish the instant transaction from a Bond for Deed on the grounds that a cash sale was executed by the parties and held in escrow, instead of the parties agreeing that the final sale would be executed in the future after all installment payments had been made. The closing attorney was accepted *188 by the court without objection as an expert in Bond for Deed and similar real estate transactions. He testified that in 1991, regulations were issued by the United States Department of Treasury that effectively preclude the use of Bond for Deed contracts where there is a pre-existing mortgage on the property. Under 12 C.F.R. § 591.2(b), the execution of a Bond for Deed is considered as a sale for purposes of triggering a "due on sale" clause, which gives the mortgage holder the right to foreclose on the property. He further testified that he stopped using the Bond for Deed format at that point and confected the series of documents used in this case to avoid running afoul of the federal regulations.

The Hybrid Innominate Contract Theory
The third theory under which the transaction in question can be viewed is as a legally permissible innominate contract for the conditional sale of an immovable. To reiterate: the series of documents involved in this transaction is as follows: (1) the agreement to purchase or sell (which was recorded); (2) the escrow agreement; (3) the executed cash sale; and (4) the cancellation agreement. These documents were purportedly designed to meet the needs of both parties. The purchaser could avoid obtaining a conventional loan. There would be financing available and the "due on sale" clause would hopefully be avoided. The sellers could keep title until payment of all installments. The purchaser would enjoy possession and could perhaps be afforded homestead exemption benefits. The escrow agent had authority to record the executed cash sale when all payments had been made and the rights of the parties relative to repairs, insurance, income tax and other matters were stipulated.
The defendant sellers maintain that there is no legal reason why a contract cannot be made that calls for title to be placed in escrow for transmittal after full payment. They argue that this transaction should be recognized as a distinct innominate obligation. Additionally, it is urged that the fact that the deed was contemporaneously executed and placed in escrow does not in any way alter the validity of the transaction.
The innominate styled contract before us is similar to the Bond for Deed contract in that title passes upon the fulfillment of conditions and an escrow agent handles, among other things, the installment payments and affords the 45-day notice of default if the property is encumbered. It differs from a Bond for Deed in that the designated agent is not a bank authorized to do business in the state but is styled "Escrow Funding, Inc." without further explanation. The Bond for Deed does not necessarily contemplate an executed cash sale to be held in escrow; it simply requires that after payment, the seller agrees to deliver title to the buyer. The Bond for Deed requires that the seller obtain and record a written guarantee from the mortgage or privilege holders to release the property upon payment of the stipulated price. This innominate contract does not so require and there is no evidence in the record to suggest that this was done. Finally, there is a significant distinction in the remedy prescribed in the Bond for Deed statute and that provided in the innominate contract. The statute provides simply for a 45-day notice requirement prior to exercising the right of cancellation without stipulating any further remedies or statutory consequences of default. The innominate contract has the following extensive provisions relative to default and forfeiture:
15. Default: Appearers further declare that the timely payment by Purchaser of each monthly installment, until the sum of $50,000 has been paid on the principal *189 (excluding the initial payment of $8,000), plus the payment of all taxes, and any state, local or other assessments and insurance premiums is of the essence of this Agreement and that if any of the said installments, taxes, assessments, or insurance premiums are not paid within ten (10) days of the due date, or if Purchaser shall in any other manner violate the covenants hereunder, then in any of such events, Purchaser shall be in default and Seller shall have the right: To send a Notice of Default to Purchaser, by registered or certified mail to Purchaser's last known address. If purchaser fails to cure the default within forty-five (45) days from the mailing of the Notice of Default, Seller may, at Seller's option:
A. File suit for specific performance of this Agreement, and accelerate all installments due for the unexpired remaining term of this Agreement and declare said amount immediately due and payable, together with an attorney's fee of 20% of the total amount due by purchaser in the event an attorney is employed to enforce any rights of Seller under this Agreement. Upon payment of all such amounts due, Escrow Funding, Inc. will immediately record the Act of Cash Sale.
OR
B Declare the sale to be null and void and instruct and direct Escrow Funding, Inc. to cancel the Agreement to Purchase/Sell executed this date by recondition of the Act of Cancellation which has also been placed in escrow with Escrow Funding, Inc.
In the event of such default and failure to cure, all parties expressly agree that this Agreement and the Sale and the Agreement to Purchase/Sell shall be dissolved in accordance with the provisions of La. Civil Code Article 2017, without the necessity of a judicial dissolution. Purchaser expressly waives any additional time to perform which may be allowed by La. Civil Code Article 2013. In such event Purchaser's rights under this Agreement, the Sale, and the Agreement to Purchase/Sell shall be forfeited as hereinafter provided.
16. Forfeiture: In the event of such default and cancellation, the title to the above described property shall be free and clear from any and all claims by Purchaser, and Seller shall be entitled to retain all payments heretofore made by Purchaser and all improvements placed upon the premises without reimbursing Purchaser therefore:
It is expressly agreed and stipulated that the initial payment made at the closing, plus the total monthly installments paid by Purchaser, constitute the stipulated compensatory amount and /or liquidated damages which Seller is entitled to retain to fairly compensate seller for: (1) the fair and reasonable rental value of the property involved herein which is owed to Seller for Purchaser's use of the property during the term of the agreement; (2) reasonable compensation owed to Seller under La. Civil Code Article 1995 for Seller's removal of the said property from the market, and the resultant loss of all opportunities to sell the subject property to a third party during the term of this agreement; (3) reimbursement of real estate broker's commission, closing fees and costs, transaction taxes/fees and Federal and State income taxes paid or incurred by Seller as a result of this agreement; (4) reimbursement of all reasonable attorney's fees and costs incurred by Seller to protect any interest or enforce any rights of Seller under this Agreement; (5) damages to Seller's credit as a result of Purchaser's failure to make timely *190 payments; damages under La. Civil Code Article 1994 for nonperformance, defective performance and/or delay in performance.
Further, Purchaser covenants and agrees that they and all persons holding possession of the property described herein shall immediately surrender possession of said property and the improvements thereon to Seller upon cancellation of this agreement.
Like a Bond for Deed, the documents executed by the parties clearly provide that record title was not to be delivered to the buyer until the full purchase price had been paid. In addition, all of the parties to the transaction agree that it was not intended as a final transfer of title. The parties do not contest the validity of the documents executed. Their dispute is confined to the consequences that flow from default. While the agreements entered into in this case do not follow all of the provisions called out by the legislature for the protection of a purchaser in a Bond for Deed transaction, the plaintiff has not raised any of these deviations as a bar to the effectiveness of the agreements.

CONCLUSION
As previously noted, we respectfully cannot agree with the trial judge that the transaction before us constituted a prohibited conditional sale so as to effect an immediate transfer of title subject to a vendor's lien. The trial judge erred in holding that the transaction immediately transferred title and in reasoning that the eviction of the plaintiff was wrongful because title had already passed to her. In our view, title remains in the Theards. Having rejected the ruling of the trial judge, we must now determine the rights of the parties on the record before us.
The parties at inception voluntarily participated in a contractual arrangement for their own purposes. Whether the distinguishing facets of this "innominate contract" as compared to a Bond for Deed contract served these purposes is not the subject of our inquiry. Nor is the designation of the type contract a compelling matter.[5] The conditional sale aspect is likewise not challenged herein as contrary to public policy. However, the default and forfeiture provisions must be evaluated in terms of the jurisprudentially expressed public policy related to conditional sales in Bond for Deed contract transactions.
In Scott v. Apgar, 113 So.2d at 460, the Supreme Court rejected a forfeiture clause that entitled the seller to retain all moneys received as liquidated damages. The court relied on its earlier decision in Heeb v. Codifer & Bonnabel, Inc., 162 La. 139, 110 So. 178 (1926), explaining:
The law does not sanction the imposition of punitory or exemplary damages by contract or otherwise, but only such *191 as are in their nature and character compensatory.
. . . .
The inequity, unreasonableness, and illegality of such a penal clause as here sought to be enforced is so obvious as to scarcely need citation of authority. [Citations omitted] 110 So. at 179-180.
In our view, the principles expressed in Scott are equally applicable here. For the same equitable and public policy reasons, we find that the forfeiture clause in the contract at issue is unenforceable, even if the transaction is interpreted as an innominate contract distinct from a Bond for Deed.
We now address the consequences of seller's cancellation of the transaction. Regardless of how the transaction is characterized, the seller had a right to regain possession of the property upon the buyer's default. Paragraph 15 of the Escrow Agreement mirrors the Bond for Deed Statute and provides the same notice requirement upon default by the buyer and the same right to cancel the transaction. In this case, notice of default was properly given and the default was not timely cured. Plaintiff does not claim that she tendered payment so as to prevent the operation of either the statutory or contractual right of the seller to cancel the transaction. Moreover, any defenses to eviction should have been presented in the eviction proceeding. We are not privy to the record in that proceeding. However, the parties have stipulated that there was a Judgment of Eviction ordering plaintiff to vacate the property. Thus, any defenses presented to the eviction were evidently rejected by the Justice of the Peace who rendered judgment. That judgment is now final. Accordingly, we reject plaintiff's claim for damages for the intentional tort of wrongful eviction. We reverse the judgment of the trial court finding that the eviction was wrongful and we vacate the award of general damages for wrongful eviction. Our disposition of this issue makes it unnecessary for us to further consider defendants' exception of res judicata.
We agree, however, that a further adjustment of the rights of the parties must be made. We have already reviewed the jurisprudence that has developed to adjust the rights of parties to a failed Bond for Deed transaction. We find it particularly noteworthy that the scheme described in the jurisprudence for adjusting the rights of the parties is not found in the Bond for Deed statute and has developed as a nonstatutory, equitable manner of resolving competing interests. Scott v. Apgar, 113 So.2d at 461. We find it equally appropriate here. The parties stipulated that plaintiff expended $21,603.50 for the down payment, monthly installments, taxes and insurance on the property.[6] Plaintiff is entitled to the return of this amount but subject to a credit for the reasonable rental value of the property during the period of plaintiff's possession. Because we cannot determine the rental value form the record, we remand this matter to the trial judge to ascertain the amount of the credit due.
We reject plaintiff's claims for reimbursement for air conditioning repairs because those bills were not allowed into evidence by the trial judge and there is no showing that the repairs were other than normal maintenance expenses. We also reject plaintiff's claims for a refund of *192 costs incurred in connection with the original sale transaction and the eviction proceeding. The payment of those expenses did not enrich defendants; any loss with respect thereto was a result of plaintiff's own breach of the contract.
Finally, we reject plaintiff's claim for attorney's fees. As a general rule, attorney's fees are not assessable as an item of damages except where provided by statute or by contract. Hernandez v. Harson, 237 La. 389, 111 So.2d 320 (1958); Chauvin v. La Hitte, 229 La. 94, 85 So.2d 43 (1956). We know of no statute providing for attorney's fees in a case such as this. Nor is there a contractual provision that supports plaintiff's claim. The only contract stipulating for the award of attorney's fees in favor of plaintiff was the preliminary agreement to sell signed on Feb. 5, 1996. However, plaintiff did not sue to enforce that contract. The trial judge did not err in failing to award of attorney's fees in this case, and we find no basis for such an award.
Inasmuch as we would reach the same result regardless of the characterization of the agreement, we need not pass on the question of whether the transaction constituted a Bond for Deed as opposed to a valid hybrid innominate contract. In either case, the transaction did not effect an immediate transfer of legal title to the property and in either case the eviction was not wrongful.[7]

DECREE
For the foregoing reasons, the judgment of the trial court is reversed. Defendants are ordered to return to plaintiff $21,603.50 representing the moneys paid on the purchase price, insurance and taxes, together with legal interest from date of judicial demand, less a reasonable rental value of the property during plaintiff's occupancy. The case is remanded to the district court for a determination of the just and reasonable rental value of the property. Each party shall bear their own costs for this appeal. Assessment of costs at the trial court level shall await final disposition of the case.
REVERSED AND REMANDED.
NOTES
[1] Honorable William F. Kline, Judge (retired), serving Pro Tempore by special order of the Louisiana Supreme Court.
[2] Honorable Philip C. Ciaccio, Judge (retired), serving Pro Tempore by special order of the Louisiana Supreme Court.
[3] A due on sale clause typically gives a mortgagee the right to declare the entire indebtedness immediately due and payable if the property subject to the mortgage is transferred without permission of the mortgagee. The clause is designed to prevent the assumption of a low interest rate mortgage debt. First Fed. Sav. & L. Ass'n of Alexandria v. Botello, 725 F.2d 350 (5th Cir.1984). La. R.S. 6:837(A) recognizes such clauses as valid and enforceable.
[4] Roy O. Martin Lumber Co., Inc. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951) (sale of a tractor, three motors, two mules and two trailers); Byrd v. Cooper, 166 La. 402, 117 So. 441 (1928) (sale of mules); Cristina Inv. Corp. v. Gulf Ice, 55 So.2d 685 (La.App. 1st Cir. 1951) (sale of a movable ice-crusher).
[5] After reviewing the jurisprudence with respect to Bond for Deed transactions, we are not persuaded that the contemporaneous execution of a cash sale to be held in escrow for later delivery and recordation as opposed to execution and delivery of a deed at a later date, in and of itself, distinguishes this transaction from a Bond for Deed. Gibsland Supply Co. v. American Employers Ins. Co., 242 So.2d 310 (La.App. 2d Cir.), writ denied, 257 La. 987, 244 So.2d 858 (1971). La. R.S. 9:2041 defines a Bond for Deed as a transaction where the title will be "delivered" after full payment. The statute does not speak to the timing of execution of the sale. However, in view of jurisprudence that allowed conditional sales of realty as valid prior to passage of the Bond for Deed statute, we also do not find any public policy reason not to enforce the contract, even if it is not a Bond for Deed, except insofar as it provides for a forfeiture of the purchaser's payments in connection with the failed transaction.
[6] Plaintiff attempted to introduce evidence of the fair rental value of the property at trial. The only reason evidence of rental value was excluded was that the witness offered on the issue failed to qualify as an expert on such matters. Thus, although defendants did not affirmatively plead a right of set-off, the pleadings were enlarged to include that issue.
[7] See Viso v. Gullo, 179 La. 8, 153 So. 3 (1934). Compare Guste v. Hibernia Nat. Bank in New Orleans, 94-0264 (La.App. 4th Cir.5/16/95), 655 So.2d 724, writ denied, 95-1503 (La.9/29/95), 660 So.2d 852.