E.C.I. PROPERTIES INC, OSWALD JOHN
OWENS II, AND ROMA LANETTE CARROLL

VERSUS

WEBER PROPERTIES JEFFERSON
HIGHWAY L.L.C., ESCROW FUNDING INC.
AND RUSSO PROPERTIES, JEFFERSON
HIGHWAY, L.L.C.

NO. 25-CA-143

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 756-845, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

September 24, 2025

**SCOTT U. SCHLEGEL**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
Scott U. Schlegel, and Timothy S. Marcel

<u>**AFFIRMED**</u>
    **SUS**
    **JGG**
    **TSM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR DEFENDANT/APPELLANT,
WEBER PROPERTIES JEFFERSON HIGHWAY L.L.C.
    Tracey L. Rannals

COUNSEL FOR PLAINTIFF/APPELLEE,
E.C.I. PROPERTIES INC., OSWALD JOHN OWENS, II AND ROMA
LANETTE CARROLL
    Robert L. Marrero

**SCHLEGEL, J.**

Defendant, Weber Properties, Jefferson Highway, L.L.C. ("Weber"), appeals the trial court's judgment entered against it and in favor of plaintiffs, E.C.I. Properties, Inc. ("E.C.I."), Oswald John Owens, II, and Roma Lanette Carroll, for reimbursement following the cancellation of an assignment of a bond for deed contract. For reasons stated more fully below, we affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

This matter arises from an Assignment of Bond for Deed contract entered into between E.C.I. and Weber on November 4, 2002, for the purchase of a property located at 4451 Jefferson Highway and 503-505 Newman Street in Jefferson, Louisiana.[1] The property includes a building with two commercial units on the first floor, two residential units on the second floor, and an additional residential unit over the garage. The original Bond for Deed was entered into between defendants, Russo Properties, Jefferson Highway, L.L.C. ("Russo Properties") and Weber, on October 2, 2001. According to the terms of the original Bond for Deed, Russo Properties agreed to sell Weber the property at issue for $254,000.00. Weber agreed to make a $38,000.00 down payment at the time of signing of the Bond for Deed, and then 360 monthly installments of $1,509.61, beginning on November 1, 2001. Upon payment of the final installment, Russo Properties agreed to transfer title to the property to Weber.

Approximately a year later on November 4, 2002, Weber entered into an Assignment of Bond for Deed with E.C.I. Oswald Owens, E.C.I.'s president, and his father, John Owens, decided to invest some money in real estate after Rebecca Weber, a real estate agent and managing partner of Weber, showed them the property at issue. They agreed to purchase the property but chose to use a bond for

---

[1] La. R.S. 9:2941 provides that a "bond for deed is a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer."

deed for the purchase due to credit issues. Oswald Owens explained that he agreed to pay the down payment and principal payments, and his father agreed to pay the remaining payments while they worked together to improve the property.

The Assignment of Bond for Deed transferred Weber's rights and interests in the Bond for Deed to E.C.I. In addition, it provided for a purchase price of $290,000.00 for the property. The Assignment indicated that, at the time of signing on November 4, 2002, E.C.I. had already made a down payment of $20,000.00, and would make additional principal payments to the seller in the amount of $20,000.00 on May 1, 2003, and $10,000.00 on August 1, 2003. E.C.I. also agreed to pay monthly installments of $2,236.53, until the remaining principal balance of $240,000.00 was paid. The monthly payment included amounts for principal and interest ($1,761.04), as well as escrow amounts for property taxes ($176.93) and insurance ($278.56), and a $20.00 fee to the escrow agent.[2] The Assignment also appointed defendant, Escrow Funding, Inc., as the escrow agent to receive and distribute E.C.I.'s monthly payments, and provided for the principal/interest payment to be divided between Russo Properties ($1,509.61) and Weber ($251.43).

E.C.I. occupied the property for 152 months. During that time, Oswald Owens lived in the apartment above the garage while John Owens and his wife, Roma Lanette Carroll, lived in one of the residential apartments on the second floor. John Owens also operated his business, Secure Lifestyles, in the commercial space on the first floor. According to John Owens, his income was sporadic so E.C.I. was placed in default over 60 times due to its failure to make timely payments. On May 21, 2015, after providing requisite notice, Weber cancelled the Assignment of Bond for Deed. Russo Properties subsequently cancelled the Bond

---

[2] The monthly payment later increased to an amount in excess of $2,900.00 due to an increase in the escrow required to pay taxes and insurance for the property.

for Deed with Weber on October 22, 2015, and sold the property on the same day to Rowley Properties, L.L.C. for $300,000.00.

On January 11, 2016, plaintiffs filed this lawsuit against Russo Properties, Weber, and Escrow Funding. In their petition, plaintiffs sought reimbursement for the amounts paid under the Assignment of Bond for Deed, as well as costs incurred for improvements they made to the property. After several continuances, a bench trial was held on June 27-28, 2024, during which time the judge heard from plaintiffs' witnesses, John Owens, Oswald Owens, and Roma Lanette Carroll, and defense witnesses, Robin Regan (escrow agent representative), Rebecca Weber, and Fredrich Gurtler, an expert home inspector and civil engineer. The parties also introduced documentary evidence that included photographs of the property, copies of the Bond for Deed and the Assignment, payment ledgers, and account statements.

Following the trial, the court requested post-trial memoranda from the parties. In their post-trial memorandum, plaintiffs conceded that they failed to prove their claims against Escrow Funding and agreed that it should be dismissed from the proceedings. With respect to Weber though, plaintiffs argued that they were entitled to reimbursement of the down payments, monthly payments, and escrow payments they made totaling $449,629.92. Plaintiffs also argued that they were entitled to improvements made to the property in the amount of $100,000.00, despite their recognition that they only provided receipts for approximately $5,700.00 of the materials used for the improvements. Plaintiffs also acknowledged that Weber was entitled to a credit for the fair market rental value of the property while they occupied the premises but argued that Weber failed to meet its burden to establish the amount to be assigned. Plaintiffs suggested that the trial court set the monthly rental amount at $750.00 per month, based on plaintiffs' claim that Ms. Weber allegedly offered to rent the property to them for this amount

following the cancellation of the bond for deed.  Additionally, plaintiffs argued that Weber was the party liable to reimburse them because it contractually assumed Russo Properties' obligations under the Bond for Deed.

In its post-trial memorandum, Weber argued that it was not the owner of the property, and therefore, it was not liable to E.C.I. for any amounts owed as a result of the cancellation of the Assignment.  It further argued that E.C.I. was not entitled to reimbursement because it earned income from the property that exceeded the payments made by E.C.I.[3]  Alternatively, Weber argued that the fair market rental value of the property should be assigned at $3,000.00 to $3,200.00 per month for 152 months, which would also exceed the reimbursement amount sought by plaintiffs.  Finally, Weber argued that plaintiffs failed to prove they were entitled to reimbursement for any improvements made to the property.

On August 15, 2024, the trial court issued a judgment dismissing Escrow Funding and Russo Properties from the lawsuit and also rendering judgment in favor of plaintiffs and against Weber for $30,012.74.  In its reasons for judgment, the trial court recognized that a seller is not allowed to retain all of the funds paid by the purchaser following the cancellation of a bond for deed contract, but the seller is entitled to a credit for the fair market rental value of the property during the purchaser's occupancy.  Thus, the trial court determined that E.C.I. had made reimbursable payments totaling $410,012.74.[4]  The trial court denied plaintiffs' request for reimbursements for improvements they allegedly made to the property due to the lack of supporting documents and evidence presented regarding the

---

[3] Weber contends that E.C.I. received between $466,000.00 in income during its occupancy of the property, including $243,000.00 in rent from John Owens' company, Secure Lifestyles; $50,000.00 from Oswald Owens for the down/principal payments due under the Assignment; and $172,800.00 in rental payments for workers housed at the property following Hurricane Katrina.  Plaintiffs counter that they were only paid approximately $60,000.00 for housing the Katrina workers and additional costs were incurred to provide two meals a day to the workers.

[4] The trial court explained in its reasons for judgment that based on the account history provided by Escrow Funding, E.C.I. made payments totaling $429,696.92.  However, this amount included $19,684.18 in fees paid to Escrow Funding, which the court found were not reimbursable.  Consequently, the trial court concluded that it would "base its ruling on the figure of $410,012.74."

property's condition. In addition, the trial court found that Weber was entitled to a credit for the fair market rental value of the property in the amount of $2,500.00 per month for a total value of $380,000.00. Thus, after subtracting the fair market rental value ($380,000.00) from the reimbursement amount ($410,012.74), the trial court entered a judgment in favor of plaintiffs and against Weber for the balance of $30,012.74.

Both plaintiffs and Weber filed motions for new trial. Plaintiffs argued that the amount of the reimbursement should be $50,012.74 because the trial court failed to include the $20,000.00 down payment made at the closing in the reimbursable amount. And in its motion for new trial, Weber argued that the trial court erred by entering judgment against it because: (1) it was not the owner of the property and therefore, it did not owe any reimbursement under the Assignment; (2) the trial court erred by setting the monthly fair market rental value at $2,500.00, which was contrary to the evidence; and (3) the trial court should have also offset the income that E.C.I. received during the time it occupied the property from the reimbursement amount due. Weber raised the issue of offset for the first time in its motion for new trial. The trial court signed a judgment denying both motions for new trial on October 17, 2024.

On November 8, 2024, Weber filed a motion for devolutive appeal, which was granted on November 15, 2024. Plaintiffs did not file a separate appeal or answer to Weber's appeal.

## LAW AND DISCUSSION

Weber raises three assignments of error on appeal. First, it argues that the trial court erred by casting it in judgment because it was not the owner or seller of the subject property and therefore, any damages awarded to plaintiffs should have been cast against the owner/seller, Russo Properties. Second, it contends that the trial court erred by setting the monthly fair market rental value at $2,500.00.

25-CA-143                                    5

Finally, Weber argues that the trial court should have offset the income E.C.I. earned from the property during its occupancy against the reimbursement awarded to plaintiffs.

When a buyer defaults on a bond for deed contract by failing to pay the installments as they come due, the seller may cancel the contract as provided in La. R.S. 9:2945. However, the statutory law governing bonds for deed does not address the parties' rights following cancellation of the bond for deed.

Accordingly, courts have adopted an equitable scheme of reimbursements and credits in the case of a failed bond for deed transaction. *Montz v. Theard*, 01-768 (La. App. 1 Cir. 2/27/02), 818 So.2d 181, 187; *Regua v. Saucier*, 13-832 (La. App. 4 Cir. 11/20/13), 129 So.3d 798, 800, *writ denied*, 13-2976 (La. 2/28/14), 134 So.3d 1179; *Scott v. Apgar*, 113 So.2d 457, 461 (1959). Upon cancellation of a bond for deed contract, the seller is not entitled to retain all funds paid by the purchaser. *Id.* Louisiana courts have held that the purchaser is entitled to the return of all amounts paid on the purchase price, including the down payment and monthly installments, as well as the insurance premiums and taxes paid. *Montz*, 818 So.2d at 187. At the same time, the seller is entitled to an allowance for the fair market rental value of the property during the period of the purchaser's occupancy. *Id.* Furthermore, clauses in a bond for deed contract that provide for the forfeiture of all amounts paid by the purchaser should be held null and void as against public policy. *See Scott*, 113 So.2d at 860; *Montz*, 818 So.2d at 187. Louisiana courts have reasoned that these forfeiture clauses are inequitable, unreasonable, and represent an illegal attempt to recover punitive rather than compensatory damages. *Id.*

*Was Weber a Seller Under the Assignment of Bond for Deed?*

In support of its first assignment of error, Weber argues that the trial court committed legal error by entering a reimbursement award against it because the

jurisprudence only requires a *seller* of the property to reimburse the purchaser. And under the Assignment of Bond for Deed, Weber contends that it always remained a purchaser and never became a seller because it only assigned its rights as purchaser to E.C.I. and remained contractually obligated to Russo Properties to fulfill its obligations under the original Bond for Deed. Therefore, Weber contends that Russo Properties is the only party that can be cast in judgment as the seller under the original Bond for Deed.

In response, plaintiffs argue that the trial court determined that Weber received all of the funds paid by E.C.I., and therefore, Weber is the appropriate party to cast in judgment as the recipient of the funds paid under the Assignment of Bond for Deed. Plaintiffs also argue that Weber contractually assumed all of Russo Properties' obligations in the Assignment of Bond for Deed.

Our review of the terms of the Assignment of Bond for Deed, as well as the evidence presented at trial, indicate that Weber did in fact assume the position of seller in this transaction. In the Assignment of Bond for Deed, Weber increased the purchase price of the property from $254,000.00 to $290,000.00. The Assignment also provided for Weber to receive a portion of the monthly principal/interest payment in the amount of $251.43. The closing statements prepared by the title company when Weber and E.C.I. entered into the Assignment even listed Weber as the "seller" in the transaction. Weber and E.C.I. also entered into amendments to the Bond for Deed in 2009 and 2014, that gave Weber the option to "call the remaining principal and interest due under the said Bond for Deed" with 90 days' notice. Therefore, contrary to Weber's arguments, the Assignment of Bond for Deed was not simply limited to the transfer of its obligations as purchaser to E.C.I.

Further, though the evidence does not indicate that Weber received all of the payments E.C.I. made to Escrow Funding under the Assignment of Bond for Deed

as alleged by plaintiffs, it does indicate that Weber received a substantial amount of the payments. Robin Regan, the owner of Escrow Funding, testified that the gross amount that Weber received of E.C.I.'s payments was $88,057.47.[5] This amount included the two principal payments that E.C.I. made in the amount of $20,000.00 in May 2003 and $10,000.00 in August 2003. Ms. Regan also testified that when E.C.I. failed to make timely monthly payments, Weber had to step in on several occasions and make payments which included $14,358.15 due to Russo Properties under the Bond for Deed and $2,981.64 for a tax payment. Thus, Weber contends that the net total amount it received from E.C.I., through Escrow Funding, under the Assignment was $70,717.68. At trial, Rebecca Weber also agreed that Weber received the initial $20,000.00 down payment, which was not included in the amounts paid through Escrow Funding.[6] Thus, the evidence indicates that Weber received over $90,000.00 of the payments made by E.C.I. under the Assignment of Bond for Deed.

As explained above, courts have adopted an equitable scheme to reimburse purchasers and credit sellers when a bond for deed is cancelled. La. C.C. art. 4 provides that "[t]o decide equitably, resort is made to justice, reason, and prevailing usages." Considering the evidence indicating that E.C.I. assumed the position of seller and received substantial payments under the Assignment of Bond for Deed, we do not find that the trial court erred or abused its discretion by

---

[5] Ms. Regan also testified that Russo Properties received $231,328.59 of the payments, Escrow Funding received $19,684.18 for its fees, and $105,298.24 was paid from the escrow account for taxes and insurance.

[6] Plaintiffs argue in their appellate brief that the trial court erred by failing to include the $20,000.00 down payment in the total amount paid by E.C.I. under the Assignment of Bond for Deed. While we recognize that the trial court did not include this payment in its calculations, plaintiffs did not file an appeal or an answer to the appeal and therefore, cannot seek a modification of the judgment. *See Mellor v. Parish of Jefferson*, 18-390 (La. App. 5 Cir. 12/27/18), 263 So.3d 477, 483.

rendering the reimbursement award against Weber.[7]  For all intents and purposes, it

was a "seller" in the transaction with E.C.I.

*Fair Market Rental Value*

In its second assignment of error, Weber argues that the trial court erred by

setting the monthly fair market rental value for the property at $2,500.00.  Weber

contends that the evidence introduced at trial established a fair market rental value

between $2,750.00 and $3,400.00 per month.

In its reasons for judgment, the trial court recognized the challenge in

determining the fair market rental value in this matter due to the speculative and

anecdotal nature of the testimony and evidence presented at trial, and explained its

reasons for setting the amount at $2,500.00 as follows:

> [T]his matter revolves around the fair market rental value of the
> property.  The testimony on this issue was varied, anecdotal, non-
> expert and speculative.
>
> The court must determine the fair market value of the property based
> on all of the evidence.  This includes, particularly, the condition and
> age of the property and its location.  The court takes cognizance of the
> wildly fluctuating rents paid at different times of the period involved.
> The Court, therefore, concludes that the fair rental value of the
> property can reasonably and within the court's discretion be set at
> $2,500.00 per month.  As such, it's (sic) value is $380,000.00.

A trial court's reasonable evaluations of credibility and reasonable

inferences of fact should not be disturbed on review unless they are manifestly

erroneous or clearly wrong.  *Jackson v. Sumlin*, 23-329 (La. App. 5 Cir. 4/10/24),

386 So.3d 318, 327-28, (citing *Wooley v. Lucksinger*, 09-571 (La. 4/1/11), 61

So.3d 507 and *Rosell v. ESCO*, 549 So.2d 840 (La. 1989)).  When findings are

---

[7] We recognize that the trial court dismissed plaintiffs' claims against Russo Properties without explanation.  The record indicates that Russo Properties never appeared nor participated in this litigation. Weber contends in its appellate brief that service was requested, but never effected against Russo Properties.  The service returns are not contained in the appellate record.  However, on April 12, 2016, plaintiffs filed a motion for default judgment representing that Russo Properties was served on January 19, 2016.  In response, the trial court entered a preliminary default in accordance with the rules governing default judgments in effect at that time.  Plaintiffs did not take any steps to confirm the preliminary default against Russo Properties.  However, in their pretrial memorandum, plaintiffs stated that Russo Properties' principal, Jean Gardner Russo, was deceased and that the "entity is represented to be an empty corporate shell and has neither appeared in this suit nor filed any pleadings."

based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trial court's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Id*. at 328.

The trial court's factual findings under the manifest error standard can only be reversed if the appellate court finds, based on the entire record, no reasonable factual basis for the factual finding and the fact finder is clearly wrong. *Id.* Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable trier of fact would not credit the witness's story, then the appellate court may find the trier of fact was manifestly erroneous even when a finding of fact is purportedly based on a credibility determination. *Id.* Where the fact finder's ruling is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong. *Id.*

On appeal, Weber argues that its manager, Rebecca Weber, testified that she has been a real estate agent since 1984 and that Weber collected $2,750.00 per month in rent for the property in 2001. Specifically, she testified that Jackson Hewitt rented the largest commercial space for $1,050.00 per month; a bakery rented the other commercial space for $500.00 per month; the two residential units were each rented for $575.00 and $350.00 a month; and the garage apartment rented for $275.00 per month.

Weber also claims that E.C.I.'s representative, John Owens, admitted at trial that the property had a fair market rental value of $2,900.00 to $3,400.00 per month. However, plaintiffs argue in response that Mr. Owens testified that when they obtained possession of the property, the only tenant paying rent was a company, Jackson Hewitt, which moved out shortly thereafter. He also testified

that the property was in "rough shape" when they took possession and that it was a "fixer upper."

Mr. Owens further explained that his company, Secure Lifestyles, occupied the commercial space after Jackson Hewitt left and that $1,600.00 was an appropriate rental value for the commercial space. He also agreed that $500.00 was a fair rental value for the garage apartment his son occupied. However, he testified that this was only after they made substantial improvements to the apartment. He also agreed that $1,200.00 to $1,500.00 would be an appropriate rent for the upstairs residential apartments, but again only if they were renovated or remodeled. Both Mr. Owens and Ms. Weber agreed that renovations of the property had not been completed when Weber cancelled the Assignment of Bond for Deed. Ms. Weber also testified that a substantial amount of money would be required for renovations before Weber would be able to rent the property again after it regained possession.

Based on the foregoing, we cannot find that the trial court was manifestly erroneous in setting the fair market rental value at $2,500.00 per month.

*Setoff for Income*

In its third assignment of error, Weber contends that the trial court erred by failing to credit or setoff the amount of the reimbursement with income received by E.C.I. during the time it possessed the property at issue. Weber contends that in addition to the credit allowed for fair market rental value of the property, the trial court should have also applied a setoff for income earned by E.C.I.

A setoff is an affirmative defense which must be specifically pled in the defendant's answer. *Gray v. James*, 503 So.2d 598, 601 (La. App. 4 Cir. 1987). Weber did not raise the issue of setting off income allegedly received by E.C.I. during its occupancy of the property as an affirmative defense in its answer. Weber also did not raise the issue of an additional setoff for income in its post-trial

memorandum. Rather, it argued that the trial court should deduct the amount of the actual income E.C.I. received from the amount paid by E.C.I. instead of deducting the fair market rental value. Weber did not ask the trial court to award it both a setoff for income earned by E.C.I. and a credit for the fair market rental value until it filed its motion for new trial, which the trial court denied. Further, the jurisprudence has established that the proper measure to determine the credit due to the seller following the cancellation of a bond for deed is the fair market rental value of the property during the purchaser's possession. *See Montz, supra.*

Accordingly, we find that Weber failed to properly raise its claim for a setoff of income earned by E.C.I. from the property.

## CONCLUSION

For these reasons, we affirm the trial court's judgment in favor of plaintiffs and against defendant, Weber Properties, Jefferson Highway, L.L.C.

**<u>AFFIRMED</u>**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. TRAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**SEPTEMBER 24, 2025** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**25-CA-143**

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
TRACEY L. RANNALS (APPELLANT)          ROBERT L. MARRERO (APPELLEE)

### MAILED
NO ATTORNEYS WERE MAILED