866 So.2d 877 (2004)
Robert C. BERTHELOT and Marina Motel, Inc.
v.
The LE INVESTMENT, L.L.C. and Michael M. Le.
No. 2002-CA-2054.
Court of Appeal of Louisiana, Fourth Circuit.
January 21, 2004.
Rehearing Denied March 15, 2004.
*878 A. Scott Tillery, Tillery & Tillery, Chalmette, LA, for Plaintiff/Appellee.
Kyle Schonekas, Marc D. Winsberg, Patrick S. McGoey, Schonekas, Winsberg, Evans & McGoey, L.L.C., New Orleans, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge LEON A. CANNIZZARO JR. and Judge Pro Tempore MOON LANDRIEU).
*879 MOON LANDRIEU, Judge Pro Tempore.
The defendants-appellants, Michael M. Le and The Le Investment, L.L.C., appeal the May 20, 2002 judgment on a rule for eviction ordering them to vacate the Quality Inn Marina Motel and deliver possession of the premises to the plaintiff-appellees, Robert C. Berthelot and Marina Motel, Inc. The judgment also cancelled and terminated the Lease Purchase Agreement executed by the litigants on September 8, 2000. The judgment further ordered the Clerk of Court to cancel and erase from the records the "Memorandum of said Lease/Purchase Agreement."
The plaintiffs filed a Petition for Damages for Breach of Contract and Eviction against the defendants on April 18, 2002. The judgment of eviction of May 20, 2002, which forms the basis of this appeal was rendered pursuant to summary procedure on a rule to show cause.
The thrust of the appellants' argument is that the legal effect of the agreement is that of a bond for deed in spite of the fact that the agreement is styled "Lease/Purchase Agreement," employs lease terminology and consistently refers to the parties thereto as "Lessors" and "Lessee."
The plaintiffs convinced the trial court that the agreement was a lease with an option to purchase, and that the defendants breached that portion of the agreement placing upon them the obligation that the property "shall at all times be maintained in such conditions as to meet the requirements of the Quality Inn franchise, or its successor in interest, or equal thereto."
It is undisputed that on September 8, 2000, the litigants executed a document entitled "Lease/Purchase Agreement by Robert C. Berthelot and Marina Motel, Inc. to The Le Investment, Inc., L.L.C." Appellant, Michael M. Le, signed the agreement on behalf of the L.L.C. and he also signed individually as a surety. The parties do not dispute the statement made in the agreement that:
The consideration for this Lease/Purchase Agreement is a non-refundable payment of $500,000.00 payable at the time of the execution of this document plus a monthly payment of $30,196.00 payable each month with the first payment due at the time of the execution of this agreement and payable monthly thereafter for a full term of twenty-five (25) years.
Later in the agreement in a section entitled "Purchase Agreement," the appellees agreed to sell the property to the defendants for $4,250,000. The agreement required a non-refundable down payment of $500,000 to be paid with the balance of $3,750,000 at an interest rate of 8.5% per annum to be paid in monthly installments of $30,196 until the final sale is consummated. The agreement states that:
The final sale is to be executed twenty-five (25) years from the date of this instrument, or at any time prior to that date by specific agreement ... The intent of this document is that the LESSEE shall be given credit against the sale price for each monthly payment made first as to interest and then as to principal as if it were paying a note in the same amount as the sum of $3,750,000 bearing interest at the rate of 8.5% per annum from date until paid....
[I]f the sale is consummated at the end of the twenty-five (25) year period, it is agreed that the final act of sale shall be passed within forty (40) days of the date upon which the parties agree to the closing or forty (40) days from the end of the twenty-five (25) year period. The *880 LESSORS shall deliver to the LESSEE a valid and merchantable title to the subject property free and clear of all liens, mortgages, and encumbrances.
In other words, the purchase of the property would be completed after all the monthly installments were made with no further consideration for the sale. Berthelot admitted that the $30,196 monthly payments credited against the sale price were based on a monthly amortization of the $3,750,000 balance at 8.5% interest for twenty-five years.
It is undisputed that the defendants did in fact make a payment of $530,196 (the down payment plus the first monthly installment) at the time of the execution of the agreement, and that pursuant to the agreement the defendants made monthly payments of $30,196 based on the amortization schedule. The defendants had timely tendered all payments called for under the agreement at the time this litigation was instituted.
In order to resolve the issues before us, we must determine the nature and effect of the agreement executed by the parties. The proper interpretation of a contract is a question of law subject to de novo review. Montz v. Theard, XXXX-XXXX (La.App. 1 Cir. 2/27/02), 818 So.2d 181.
La. R.S. 9:2941 defines a bond for deed as a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer. The bond for deed statute sets forth a number of particular directives the seller must comply with in the transaction including a guarantee to the purchaser from any mortgage holder that it will release the mortgage when it is paid in full, a method for cancellation of the contract in the event of non-payment by the purchaser, and appointment of a bank to receive payments from the purchaser. Id. at 187.
In this case, Berthelot agreed to deliver to Le a valid and merchantable title to the subject property free and clear of all liens, mortgages, and encumbrances. The agreement included a section entitled DEFAULT REMEDIES in which Berthelot without giving notice or putting Le in default could immediately cancel the lease and then take possession of the property. However, the monthly payments were made directly to Berthelot not to an appointed bank because there was no mortgage on the property. The requirement that a bank be designated as the escrow agent in order to insure the buyer an unencumbered title when all payments have been made as provided in the bond for deed contract "only applies to bond for deed contracts burdened with a mortgage or privilege." Mooers v. Sosa, 01-286 (La. App. 5 Cir. 9/25/01), 798 So.2d 200.
Louisiana courts have routinely treated agreements similar to the one before us as a bond for deed regardless of the characterization given them by the parties to the agreement, even when the documents do not strictly follow all of the mandates of the statute. The Louisiana Supreme Court has found that a contract can be treated as a bond for deed despite its failure to comply with certain particulars of the statute where the party for whom the omitted protections are designed does not protest their absence. Therefore, the label put on the transaction is not determinative. Montz at 187.
In a similar case, Tabor v. Wolinski, 99-1732 (La.App. 1 Cir. 9/22/00), 767 So.2d 972, the defendant Wolinskis signed a lease purchase agreement in which they agreed to purchase real property for $8,700. The agreement required the defendants *881 to pay a down payment of $225 and sixty (60) monthly installments of $188.53 using an amortization schedule. At the end of the lease, the lessor agreed to sell the property for an additional consideration of $1.00. The defendants also submitted at trial an unsigned United States Department of Housing and Urban Development "Settlement Statement" consistent with terms in the lease purchase agreement referring to the agreement as a "bond for deed" contract. The appellate court found that "[t]he determinative fact in this case is that from the inception of the transaction, the Wolinskis were bound to pay the full amount of payments, including the $1.00 consideration at the end. Thus, the agreement is distinguishable from a lease with an option to purchase." 99-1732, p. 3, 767 So.2d at 974.
In the instant case, Le was obligated to make all payments required in the lease purchase agreement with no further consideration to complete the sale. The payment requirements of the "Lease/Purchase Agreement" in this case fit the definition of bond for deed and therefore that is the legal effect of the agreement in spite of lease and rental language.
The only basis for default described in the bond for deed statutes, La. R.S. 9:2941, et. seq., is the failure to make the required payments. La. R.S. 9:2945 provides that where there is no mortgage on the property, as in the instant case, if the buyer under a bond for deed contract shall fail to make the payments in accordance with its terms and conditions, the seller, at his option, may have the bond for deed cancelled by proper registry in the conveyance records. It is clear that in no case would a seller be entitled to exercise any expedited form of forfeiture or repossession under a bond for deed other than for nonpayment, the only form of default specifically recognized by La. R.S. 9:2944.
The question is can parties in a bond for deed transaction contractually agree to and the courts of this State enforce bases for default other than non-payment, such as the maintenance requirement in the agreement in this case. Since, we find no cases or commentaries on this question, we must resort to equity in order to resolve this case. La. C.C. art. 4.
There is nothing intrinsically offensive or against public policy with having maintenance requirements in contracts affecting real property. In this case, the parties' have reasonably contracted regarding default provisions other than for nonpayment. The default remedy in the agreement allows Berthelot to cancel the lease and take possession of the property for failure to maintain the requirements in the maintenance provision. However, the trial court erred by allowing the plaintiffs-appellees to proceed by means of the summary eviction procedure when the basis for default was on a maintenance requirement, not the nonpayment of the monthly installments. The plaintiffs should have been required to file suit allowing the defendants a full trial on all defenses and offsets.
Appropriate adjustments must be made in the case of a failed bond for deed transaction. The seller in a bond for deed contract is not entitled to retain all monies paid by the purchaser. Montz at 187. A bond for deed agreement including provisions allowing the seller to retain all monies paid by the purchaser is null and void because it is inequitable, unreasonable and an illegal attempt to recover punitive damages. Id. Jurisprudence establishes that in a failed bond for deed transaction, the "purchaser is entitled to the return of all moneys paid on the purchase price, including the down payment and monthly installments, the insurance premiums, and *882 the taxes paid ... [and] the seller is entitled to an allowance for the fair rental value of the property during the period of plaintiff's occupancy and that a remand is appropriate where the rental value cannot be determined from the record." Id.
In the instant case to allow Berthelot to retain all monies paid on the purchase price, including the non-refundable down payment and monthly installments, the insurance premiums, and the taxes paid by Le would be inequitable and unreasonable. Berthelot is only entitled to an allowance for the fair rental value of the property while it was occupied by Le. Based on the record before us, we are unable to determine the fair market rental value of the property.
For the foregoing reasons, we vacate the judgment of the trial court and remand this case for trial on the merits.
VACATED AND REMANDED.