876 So.2d 862 (2004)
Gregory T. BENNETT/Ava M. Thomas
v.
Yvonne HUGHES.
No. 2003-CA-1727.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 2004.
*863 Valerie M. Briggs, Schafer & Schafer, New Orleans, LA, for Plaintiff/Appellee.
Kara Williams, New Orleans, LA, for Defendant/Appellant.
Yvonne L. Hughes, New Orleans, LA, in Proper Person, Defendant/Appellant.
(Court Composed of Judge CHARLES R. JONES, Judge MAX N. TOBIAS, JR., and Judge Pro Tempore MOON LANDRIEU).
MAX N. TOBIAS, JR., Judge.
On or about 19 September 2002, Gregory T. Bennett ("Bennett"), acting as mandatary for Ava Moody Thomas ("Thomas"), entered into a bond for deed agreement ("bond for deed") with Yvonne *864 Hughes ("Hughes") to sell a home located in New Orleans, Louisiana.[1] Under the terms of the bond for deed, Hughes made a down payment in the amount of $5,000.00 and agreed to make a second payment of $20,000.00 prior to 2 January 2003. Hughes was allowed to move into the house, but was also further obligated to pay $1,327.46 per month until 1 October 2004, at which time a balloon payment for the remainder of the purchase price of the home would be due.[2] According to the bond for deed, Hughes as the purchaser was to be responsible for paying the state and local ad valorem taxes on the property as well as maintaining flood insurance on the house.
The bond for deed provided that should Hughes default, notice of her default was to be mailed to her via certified mail. She would then have forty-five days from the date of the mailing of the notice to cure any alleged default. Pursuant to the bond for deed, as well as La. R.S. 9:2945, Thomas as owner of the property (through Bennett) would have the right to dissolution of the bond for deed should Hughes fail to remedy the default within the forty-five days.
On 23 April 2003, Escrow Services, Inc. ("Escrow Services"), the company retained to handle the administration of the bond for deed, mailed a notice of default to Hughes on the grounds that she had failed to pay the 2003 property tax levied by the City of New Orleans, which had been due on 30 January 2003, and that she further had failed to provide proof of flood insurance for the property. The notice of default was mailed by certified mail, return receipt requested, to Hughes at her home address. In the notice of default, Hughes was advised that the bond for deed would be cancelled forty-five days following the date of the letter if she did not remit a check in the amount of $1,832.73, which was the amount required to satisfy the tax bill and to secure flood insurance.
On 9 June 2003, Bennett mailed Hughes a notice of eviction and executed a cancellation of the bond for deed on 10 June 2003. On 12 June 2003, Bennett filed the cancellation of the bond for deed with the custodian of notarial records for the Parish of Orleans as required by La. R.S. 9:2945. The notice was correspondingly registered in the conveyance office of Orleans Parish. Bennett then filed a rule for possession of the property with the Second City Court of the City of New Orleans on 23 June 2003 and a hearing date was set by the court for 26 June 2003.
Hughes filed numerous exceptions to the rule for possession, including exceptions of insufficiency of service and citation, lack of procedural capacity, no right of action, improper summary proceeding, prematurity, vagueness, and lack of subject matter jurisdiction. The exceptions were set for hearing by consent on 29 July 2003 and the rule for possession was also set for that same day.
*865 On 14 July 2003, Hughes filed an amended answer and a reconventional demand against Thomas, Bennett, Escrow Services, an employee of Escrow Services, and Fairbanks Capital Corporation, Inc., which was alleged to be the mortgage holder for the property.[3] In her answer, Hughes re-asserted her exceptions previously pled and added exceptions of failure to join an indispensable party and no cause of action.[4] She further alleged in her reconventional demand that Bennett and Thomas breached the bond for deed agreement by failing to have the property inspected and/or treated for termites and by failing to replace or repair broken tiles in the kitchen as well as damaged trellises on the patio. She alleged that she attempted to remit payment to Escrow Services in May 2003, but that it refused to accept her checks and further that Bennett and Thomas illegally cancelled the bond for deed, ostensibly because they were attempting to negotiate a higher sale price for the property with an unknown party. She prayed for damages in the amount of $78,000.00, which includes return of her down payment, expenses for the bond for deed, increase in the value of the property, moving expenses and relocation costs associated with both moving into and out of the property, real estate taxes, improvements to the property, attorneys' fees, and other unspecified costs and expenses. She further prayed for a temporary restraining order and preliminary injunction to prevent her eviction from the property.
Following the hearing on the rule for possession on 29 July 2003, judgment was rendered in favor of Bennett and Thomas. Hughes was ordered to vacate the premises within twenty-four hours. See La. C.C.P. art. 4733. A judgment on Hughes' exceptions was signed on 1 August 2003 overruling all of her exceptions for "reasons orally assigned." In the same judgment, the court noted Hughes' intention to lodge an appeal of the judgment and Hughes was ordered to post a bond of $1,300.00 on the first day of each month until her appeal was adjudicated so that she might remain in the house. The trial court further ordered that Hughes' reconventional demand be severed and that she file same in the Civil District Court for the Parish of Orleans.
Hughes assigns six errors. Essentially, the main thrust of Hughes' assignments of error is that the trial court lacked subject matter jurisdiction over the claims brought by Bennett and Thomas and the reconventional demand of Hughes. Further, Hughes asserts that the trial court erred in overruling the exceptions to Bennett's petition that she raised and, finally, that the trial court erred in granting Bennett's request for an eviction.
We first address the jurisdictional arguments raised by Hughes. Hughes asserts that the Second City Court erred in hearing the case because it lacks subject matter jurisdiction over cases involving title *866 disputes arising out of bond for deed contracts. Hughes argues that the dispute between Bennett and herself is one concerning ownership of the property in question, and not one of mere occupancy. We disagree.
Hughes is correct that a city court has no subject matter jurisdiction over "a case involving title to immovable property." La. C.C.P. art. 4847(A)(1). However, La. R.S. 9:2941 defines a bond for deed as "a contract to sell real property in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer." La. R.S. 9:2941 (emphasis added). Further, the bond for deed agreement between Thomas and Hughes states:
It is clearly understood and agreed that this Agreement is not a sale, transfer or conveyance but only a written Agreement to sell, transfer, and convey property in the future; provided all terms, conditions, payments and obligations set forth herein are fully, completely and timely met by Purchaser.
Under the terms of the bond for deed between Hughes and Thomas, as well as under the statutory definition of a bond for deed, title is not delivered to the purchaser until the conditions of the contract have been satisfied and full payment has been made by the purchaser. It is undisputed that in this matter, the term of the bond for deed had not expired and there were still significant terms to be fulfilled by Hughes, most significantly a large balloon payment to be made in October 2004. Therefore, while Hughes seeks to categorize this dispute as one for title or ownership, it is clearly and merely one for occupancy of the property, which Bennett's rule for possession appropriately addressed.
Next, Hughes contends that even if Bennett's action was properly pled before the city court as an eviction, the amount of the dispute removes it from the proper jurisdiction of the city court under the code of civil procedure. La. C.C.P. art. 4844 provides:
A. A parish court or city court shall have jurisdiction, concurrent with the district court, over suits by owners and landlords for the possession of leased premises as follows:
(1) When the lease is by the day and the daily rental is one hundred fifty dollars or less.
(2) When the lease is by the week and the weekly rental is five hundred dollars or less.
(3) When the lease is by the month and the monthly rental is three thousand dollars or less.
(4) When the lease is by the year and the annual rental is thirty-six thousand dollars or less.
(5) When the suit is to evict an occupant as defined by Article 4704,[5] if the annual value of the right of occupancy does not exceed the amount in dispute to which the jurisdiction of the court is limited by Articles 4842 and 4843 or as to the amounts set forth in Subparagraphs (3) and (4) of this Paragraph.
Because a bond for deed is not a lease, subparagraph (5) of article 4844 necessarily applies to the case sub judice. Further, we note that article 4843 of the Code of Civil Procedure provided, in pertinent *867 part, that the jurisdiction of the city court in New Orleans is concurrent with the district court in cases where the amount in dispute or amount of the property involved does not exceed $20,000.00. (The jurisdictional amount has subsequently been increased to $25,000.00, but the change is neither retroactive nor applicable to this case.) We also find that Hughes satisfies the broad definition of "occupant" found in article 4704. What is crucial to the determination of proper jurisdiction, therefore, is a computation of the "annual value of the right of occupancy" for the house occupied by Hughes pursuant to the bond for deed.
At the hearing on the rule for possession filed by Bennett, extensive oral argument was presented by both sides regarding the correct valuation of the "right of occupancy." Bennett argued, and the trial judge accepted, the use of the monthly payment due under the bond for deed in the amount of $1,327.46 as the monthly value of the right of occupancy, and that the corresponding annual value of the right of occupancy is twelve times that amount, or $15,929.52. Hughes objects to this determination, and argues that the value of the right of occupancy ought to include the $25,000.00 down payment she was required to make under the bond for deed contract, as well as the amount she was responsible for in taxes and insurance. Failure to pay any of those amounts would have resulted in her eviction from the property pursuant to the bond for deed agreement, and thus should be included in the court's computation of jurisdictional amount.
No case directly on point exists that states clear instructions on how to determine the annual value of the right of occupancy for purposes of eviction pursuant to a bond for deed contract. We note that in cases where the annual value of the right of occupancy has been in dispute, the courts have consistently held that the jurisdiction of a city court may be determined by the fair rental value of the premises. Home Distribution, Inc. v. Dollar Amusement, Inc., 98-1692 (La.App. 1 Cir. 9/24/99), 754 So.2d 1057 (In an action to evict an occupant of a property, the jurisdiction of a parish or city court is determined solely by the rent paid by the occupant or the fair rental value of the property); Veillon v. Veillon, 517 So.2d 941 (La.App. 3 Cir.1987) (City court had jurisdiction over eviction action where fair rental value of property was $300.00 per month, despite occupant's argument that annual value of the right of occupancy exceeded the jurisdictional amount of $10,000.00 where property valued at more than $30,000.00); Golden v. Pesson, 166 So.2d 282 (La.App. 3 Cir.1964) (City court had jurisdiction of the eviction action where the monthly rent under month-to-month lease was less than $1,000.00, and the lessor had the obligation to repurchase unsold products, alleged to be valued in excess of $1,000.00). Although we agree with Hughes that a bond for deed is not a lease as a matter of law, we do note that the action filed by Bennett was solely a rule for possession, and did not involve any additional issues of title or breach of contract.
We are mindful, however, that a bond for deed contract differs from a lease agreement. Under a bond for deed contract, the owner of the property frequently divests himself of the financial obligation of maintaining the property and the purchaser assumes the responsibility of making payments to satisfy any mortgage as well as to satisfy the tax and insurance burdens on the property. In the present matter, Hughes was responsible not only for monthly payments to satisfy the mortgage, but also for procuring flood insurance *868 and paying the property taxes on the property.
Given the nature of a bond for deed contract, we look not only to the fair rental value of the property, but also to those other amounts Hughes was required to pay in the property owner's place and stead to maintain occupancy of the property. Because the record reflects that the monthly amount paid by Hughes to retain possession of the property was $1,327.46, which also corresponds closely to the amount due each month from Thomas under the mortgage on the property, we do not find that the trial court erred in using that figure as part of the basis for the fair rental value of the right of occupancy. Given the unique nature of a bond for deed contract, we also look to the amount required to satisfy the insurance requirements and property taxes of the property, which the record reveals to be approximately $1,832.73 per annum. Inclusion of this amount, however, only results in an annual value of occupancy of $17,762.25, which is clearly within the jurisdictional amount of $20,000.00 of the Second City Court. Although Hughes argues that her down payments equaling $25,000.00 should be considered in the computation of the annual value of the right of occupancy, we disagree. The $25,000.00 down payment constituted a term of the contract for the bond for deed and does not correspond to any real "value of occupancy" intrinsic to the property.[6] It was merely a term of the contract agreed to by Hughes and Thomas as a step in transferring the title to the property to Hughes and did not bear on any encumbrance of the property in favor of any third party that could potentially affect title to the property. Further, it in no way reflects the fair rental value of the property, or the amount required to maintain occupancy of the property for any individual other than Hughes. Thus, although we find that the trial court erred in failing to consider the debts on the property (i.e., taxes and insurance) for which Hughes became responsible under the bond for deed, we find that the error was de facto harmless.
Hughes next asserts that the trial court erred in failing to transfer the eviction action, as well as her reconventional demand, to the district court on the grounds that the reconventional demand exceeds the jurisdictional limits of the city court thereby compelling transfer of the entire matter. La. C.C.P. art. 4845(B) provides, in pertinent part, that where "a compulsory reconventional demand exceeds the jurisdiction of a parish or city court, ... the court shall transfer the entire action to a court of proper jurisdiction." Thus, the question is whether the reconventional demand filed by Hughes constitutes a compulsory reconventional demand.
A reconventional demand is "compulsory" if it "arises out of the transaction or occurrence that is the subject matter of the principal action." La. C.C.P. art. 1061(B). Hughes asserts that her reconventional demand arises out of the same transaction or occurrence as the eviction action instituted by Bennett: the bond for deed. Bennett counters that the reconventional demand deals with the cancellation of the bond for deed as well as a claim for unlawful eviction from the property. *869 Because the rule for eviction had not yet been heard, Bennett argues that any cause of action for unlawful eviction was premature and had not yet accrued; therefore, the reconventional demand could not have arisen from the same transaction or occurrence, because as Hughes had not yet been evicted from the property. Further, Hughes' prayer for injunctive relief relating to the eviction action was essentially ruled upon by the trial court when judgment was rendered in favor of Bennett and Thomas.
Hughes also maintains that the trial court erred in refusing to hear her exceptions at the hearing on 29 July 2003. The entirety of the argument in support of this assignment of error is that Hughes filed exceptions "which were not properly and completely considered by the lower court before the judge summarily ruled each and every one [sic] without comment...." We note that Hughes' brief does not contain any specific argument relating to this assignment of error; rather it refers the court to the memorandum filed in support of the exceptions in the trial court. Rule 2-12.4 of the Uniform Rules of the Courts of Appeal provides, in pertinent part, that "[a]ll specifications or assignments of error must be briefed. The court may consider as abandoned any specification or assignment of error which has not been briefed." Therefore, we are not required to address Hughes' assignment of error regarding her exceptions and may consider it abandoned.
In spite of the shortcomings of Hughes' brief, we do note that the trial court entertained substantial argument on the exceptions of lack of subject matter jurisdiction, no cause of action, and improper use of a summary proceeding. Further, the court entertained testimony from Bennett regarding the circumstances of the bond for deed agreement, and Hughes was given the opportunity to cross-examine him. Any question regarding his status in the litigation could have been raised and addressed by Hughes at the hearing, as she was afforded a full and meaningful opportunity to present evidence and argument in support of her exceptions and opposition to the eviction. Hughes was given ample opportunity to raise with specificity and present evidence on her exceptions at the hearing. She did not, and we find that the extensive oral argument presented by both Hughes and counsel for Thomas and Bennett at the hearing subsumed all of the exceptions lodged by Hughes.
Finally, Hughes asserts that the trial court improperly granted the rule for possession by Bennett on the grounds that Bennett and Thomas failed to satisfy their burden of proof as to cancellation of the bond for deed and, again, that the court lacked jurisdiction over the matter. La. R.S. 9:2945 provides, in pertinent part, the proper procedure for cancellation of a bond for deed:
If the buyer under a bond for deed contract shall fail to make the payments in accordance with its terms and conditions, the seller, at his option, may have the bond for deed cancelled by proper registry in the conveyance records, provided he has first caused the escrow agent to serve notice upon the buyer, by registered or certified mail, return receipt requested, at his last known address, that unless payment is made as provided in the bond for deed within forty-five days from the mailing date of the notice, the bond for deed shall be cancelled.[7]
*870 The record contains copies of the bond for deed, the memorandum of the bond for deed with power of attorney, the cancellation of the bond for deed and special mortgage, the receipt for recordation of the cancellation of the bond for deed, and a notice of default addressed to Hughes dated 23 April 2003, along with a postal receipt stamped by the U.S. Postal Service evidencing that the letter was mailed via certified mail, return receipt requested. Therefore, Bennett and Thomas presented sufficient evidence that the statutory requirements for cancellation of a bond for deed were met. At that point, the burden shifted to Hughes to demonstrate that she either did not default on the bond for deed or that she satisfied the default within forty-five days of the mailing of the letter, which would have been no later than 7 June 2003. A careful review of the record and transcript of the hearing reveals that she failed to rebut the plaintiff's case. No documentary evidence was introduced into evidence by Hughes, not even the only referenced documentation that Hughes apparently brought to the hearing, a certified check dated 13 June 2003,[8] a date after cancellation was filed as required by La. R.S. 9:2945. Further, although Hughes argued at the hearing that she paid the property taxes directly to the city at the direction of Escrow Services, she offered no evidence of payment or any correspondence from Escrow Services directing her to do so. In short, even if Hughes had a bona fide defense to the eviction proceeding, her failure to introduce any evidence in support of her position necessitated a judgment in favor of the plaintiff.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
JONES, J., dissents with reasons.
JONES, J., dissents with reasons.
This Court establishes a new rule as it relates to the computation of the annual fair rental value of property for purposes of ascertaining jurisdiction in cases involving bond for deed sales of real property. The determination for me is arbitrary at best and does nothing more than work to the prejudice of the Appellant. For these reasons, I respectfully dissent.
NOTES
[1] The record reveals that Thomas, for purposes of the bond for deed to Hughes, granted Bennett her power of attorney. The special power of attorney executed by Thomas and Bennett authorizes Bennett to "direct, instruct, authorize and permit AGENT [Bennett] to sell and deliver the hereinafter described real estate, and/or all of PRINCIPAL'S [Thomas's] right, title, and interest therein, with warranty of title and with subrogation of all actions of warranty, unto any person, firm or corporation or association, or such price and on such terms and conditions as AGENT may deem proper, to pay and discharge any and all charges, expenses and encumbrances in connection therewith, and to receive and receipt of the selling price."
[2] The monthly payment amount equaled Thomas' monthly mortgage payment on the property plus a $25.00 per month fee for the escrow agent.
[3] We note that the amended answer filed by Hughes was not properly verified pursuant to La. C.C.P. art. 4735, which provides, in pertinent part, that "[a]n appeal does not suspend execution of a judgment of eviction unless the defendant has answered the rule under oath, pleading an affirmative defense entitling him to retain possession of the premises,...." Although Hughes is technically not entitled to a suspensive appeal of the judgment of eviction, the deficiency of her pleadings has not been raised by Bennett and Thomas and we decline to dismiss her appeal on those grounds.
[4] The exception of failure to join an indispensable party is based on the assertion that Thomas, as owner of the property, should have been named as a plaintiff in the eviction action. Insofar as the case, as originally filed, was captioned Gregory T. Bennett/Ava M. Thomas v. Yvonne Hughes, we note that this exception is without merit.
[5] La. C.C.P. art. 4704 defines "occupant" as "includ[ing] a sharecropper; half hand; day laborer; former owner; and any person occupying immovable property by permission or accommodation of the owner, former owner, or another occupant, except a mineral lessee, owner of a mineral servitude, or a lessee of the owner."
[6] Although we disagree with Hughes that her down payments equaling $25,000.00 should be considered in the computation of the value of the right of occupancy, we note that pursuant to Louisiana law, she is entitled to recover that amount from Thomas should the bond for deed be cancelled. Berthelot v. Le Investment, L.L.C., 2002-2054 (La.App. 4 Cir. 1/21/04), 866 So.2d 877, citing, Montz v. Theard, XXXX-XXXX (La.App. 1 Cir. 2/27/02), 818 So.2d 181.
[7] This statute was modified in 1999, by Acts 1999, No. 517, § 1, which, in the first sentence inserted "or certified" following "serve notice upon the buyer, by registered" and inserted

", return receipt requested," following "by registered or certified mail."
[8] We note that even had a copy of this check been introduced into evidence, it would not be sufficient to cure the default, as it was issued after the forty-five day window available to Hughes to remedy the default.