DANIEL L. DYSART, Judge.
|,Appellants, Adrienne E. Brown and Roger L. Brown, Jr. (hereafter, collectively referred to as “the Browns”) appeal the trial court’s judgment of eviction which was based on their failure to timely make payments pursuant to the terms of a “Rent>-to-Own Purchase Agreement” (hereafter, sometimes referred to as the “Agreement”) entered into with appellee, Ellis Keyes. Appellants maintain that the Agreement was a bond for deed contract, requiring a forty-five day curative period prior to their eviction, rather than the time period afforded them.
After a review of the record, we do not find the Agreement to be a bond for deed contract. Rather, we find the Agreement to be ambiguous at best and deficient in most respects; it does not contain the elements of any particular nominate contract recognized by La. C.C. Art. 1914.[1]
Accordingly, and as will be set forth more fully below, we affirm the trial court’s judgment of eviction.
*929 | .PROCEDURAL AND FACTUAL BACKGROUND
On September 26, 2013, Ellis Keyes, as “Executor,” entered into a “Rent>-to-Own Purchase Agreement” with the Browns. The Agreement is composed of 14 short paragraphs, which, with the exception of one, all contain one sentence. The Agreement states that Mr. Keyes “agrees to sell Estate at 3305 Corinne Dr., Chalmette, Louisiana ...” to the Browns.[2] The Agreement then provides, in paragraph 2:
Rent payment of Seven-Hundred and Fifty Dollars are due by the 1st OF EACH MONTH toward the OWNERSHIP AND TITLE TRANSFER OF THE ESTATE which cost [sic] a grand total of ONE HUNDRED THOUSAND DOLLARS ($100,000.00 USD) in 2013 dollars and balance will be adjusted for INFLATION beginning in 2015, then annually. No other additional fees or increases will be added during purchase.
The Agreement does not contain any specific provisions on default, other than that found in paragraph 8, which states:
Rent is payable in advance but if received after the 17th there will be a Twenty-Five dollar penalty Applied and if not received by the following month eviction proceéding[s] will ensue.
The Agreement also required the Browns to “purchase homeowners[’] insur-anee in name [sic] of the Estate of Christine C. Keyes on the policy until paid in full.”[3] The Browns were further tasked ■with “keeping] the grass cut, preserving] the condition of the home and improving] it” and forwarding any mail received with the rent payments to Mr. Keyes.[4]
|sOn April 7, 2014, Mr. Keyes filed a “Rule to show cause why possession of the property should not be delivered to the owner,” seeking to have the Browns “return to [him] the title to the vehicle not paid for as promised” and to have “the Brown family ... ordered to vacate the property.”[5] Mr. Keyes alleged that the “rent” was “several months overdue,” the Browns failed to pay contractual late fees and the Browns failed to meet the property insurance requirements. Mr. Keyes also maintains that the Browns failed to forward his mail as they were contractually required to do, and as a result, he sustained “damage and property loss.”
The rule to show case alleged that notice was served on the Browns to vacate the property “not less than five days from the date of its delivery.” Attached to the rule was an affidavit executed by Mr. Keyes attesting to the posting of a “Five day [eviction] notice” on the property on April 1, 2014.[6]
*930 The trial court set the rule to show cause for a hearing on April 25, 2014. On the day before the hearing, Adrienne Brown filed a verified answer, in which she contended, inter alia, that the rule for possession and notice to vacate state inconsistent and conflicting reasons for eviction, that she paid rent or offered to pay the rent on time (or within the grace period for payment), that she did not breach the lease and that she has a bond for deed contract on the premises, for which she did not receive a 45 day notice to cure pursuant to La. R.S. 9:2945.
|4The matter was heard on May 29, 2014. Mr. Keyes represented himself at trial and testified, either in his case in chief or on cross-examination, to the following facts: (1) the Browns put down a deposit, but first paid rent a month late, which “took care of all the deposits”; (2) the Browns were always late in their rent payments and never paid late fees, although he objected to the late and partial payments the Browns made, until he “finally drew the line firmly”; (3) he received the rent in two payments for March, 2014; (4) the Browns offered to make a $25 partial payment toward the rent in April, which he refused.
Adrienne Brown testified that she met Mr. Keyes after responding to an advertisement to either rent or purchase the property. Mr. Keyes advised her that she could buy the home for $100,000, the monthly cost for which would be the same amount as she would pay in rent. She and her husband then entered into what she believed to be a bond for deed contract which provided that at the end of the contract’s term, the Browns would own the home. Ms. Brown then identified rental payments the Browns made — the deposit and first month’s rent (October) and receipts from November through March, 2014.[7]
In April, 2014, however, Mr. Keyes refused to accept the rent payment. Ms. Brown testified that Mr. Keyes accepted the March payment and endorsed the check; accordingly, she believed the rental payments to be current. When asked about the April rent, Ms. Brown indicated that they “went to court in April, and [Mr. Keyes] refused the check.”[8]
|fiOn further questioning, Ms. Brown conceded that the rent payments were dated on the 17th and, because they were mailed to Mr. Keyes in Kentucky, those payments were always late. She likewise admitted that her late payments were “in violation of the contract.” The Browns did not pay the contractual $25 late fee for the months on which the rent payments were late, although Mr. Keyes never demanded the late fee. Ms. Brown testified that she offered to pay a late fee in March and Mr. Keyes refused to accept it. Ms. Brown also indicated that she never received “any communications written or otherwise concerning that the payments [were] late and that any fees [were] owed.”
After hearing the testimony of the parties, the trial court found the Browns to be in violation of the Agreement and ordered their eviction.within 48 hours, in addition to the payment of court costs. By judgment dated May 30, 2014, the trial court found in favor of Mr. Keyes, granting a *931 judgment of eviction and requiring that Adrienne Brown “and all occupants of 3305 Corinne Dr.” vacate the premises no later than June 2, 2014. The judgment further awarded Mr. Keyes $1,500 in past rent for the months of April and May, 2014 and court costs in the sum of $225.09. The trial court did not issue any written reasons for judgment.
On May 30, 2014, Ms. Brown filed a Motion for Suspensive Appeal, which was granted that day, subject to Ms. Brown’s furnishing a $750 bond. Mr. Keyes then filed a Motion to [Amend] Suspensive Appeal, the precise nature of which is unclear, although it appears that he was contesting the right to a suspensive appeal in an eviction proceeding and seeking to convert the appeal to a devolutive appeal and lift the “stay of eviction.” In response to this motion, the trial court issued an Order dated June 9, 2014, converting the appeal from a suspensive appeal to a devolutive appeal.
[(Apparently out of an abundance of caution, Ms. Brown filed a Motion for Devolu-tive Appeal as well on June 9, 2014, and was granted another devolutive appeal on June 17, 2014.[9]
DISCUSSION
In a recent eviction matter, this Court reiterated the well-settled rule that “factual findings of the lower court [are reviewed] under the manifest error standard of review.” Mazzini v. Strathman, 13-0555, p. 4 (La.App. 4 Cir. 4/16/14), 140 So.3d 253, 256. Here, however, a resolution of the issues requires this Court to interpret the Agreement. As such, this is a matter of contract interpretation and “[t]he proper interpretation of a contract is a question of law subject to de novo review.” Berthelot v. Le Inv., L.L.C., 02-2054, p. 3 (La.App. 4 Cir. 1/21/04), 866 So.2d 877, 880, citing Montz v. Theard, 01-0768 (La.App. 1 Cir. 2/27/02), 818 So.2d 181.
We first note that contracts have the force of law between the parties, and the courts are to interpret them according to the common intent of the parties. La. C.C. arts. 1983, 2045. If the words of the contract are clear, unambiguous, and lead to no absurd consequences, the court need not look beyond the contract language to determine the true intent of the parties. La. C.C. art. 2046. Whether or not a contract is ambiguous is a question of law. American Deposit Ins. Co. v. Myles, 00-2457, p. 5 (La.4/25/01), 783 So.2d 1282, 1286.
Ordinarily, an ambiguity in a contract must be interpreted against the party who drafted the agreement. La. C.C. art. 2056. However, in this case, there is 17scant evidence about the preparation of the Agreement or the intent of the parties as to its •meaning. Mr. Keyes gave no testimony whatsoever about the Agreement, while Ms. Brown testified that she believed it to be a bond for deed contract. The only evidence of the confection of the Agreement came from Ms. Brown, who simply responded in the affirmative when asked whether an agreement was drafted which would provide that she “pay [Mr. Keyes] a hundred thousand dollars at the end of the renting term, and he would turn over the deed.” Accordingly, in evaluating the *932 Agreement, we cannot construe ambiguities against any party.
The Browns maintain that the Agreement is a bond for deed contract, and that, under Louisiana law, prior to evicting them, Mr. Keyes was required to provide the Browns with an opportunity to cure any delinquencies. The Browns further contend that Mr. Keyes was also required to provide the Browns with a forty-five day period within which to cure those deficiencies prior to their eviction and the termination of the Agreement. Under La. R.S. 9:2945 A, when a bond for deed buyer fails to make payments in accordance with the terms and conditions of the contract, the seller may cancel the bond for deed by “serv[ing] notice upon the buyer, by registered or certified mail, return receipt requested, at his last known address, that unless payment is made as provided in the bond for deed within forty-five days from the mailing date of the notice, the bond for deed shall be cancelled.”
Mr. Keyes, appearing pro se, takes the position that he “ha[s] the right to eviction of anyone who is not lawfully on the property ... and did so with [the Browns] for just cause.” He maintains that the notice provided the Browns five days to vacate the premises, which he appears to argue is in compliance with La. |8C.C.P. art. 4701, which provides for the eviction of a tenant from property after five days’ notice: “[w]hen a lessee’s right of occupancy has ceased because of ... nonpayment of rent,” the “lessor ... shall cause written notice to vacate the premises to be delivered to the lessee,” which provides “not less than five days from the date of its delivery to vacate the leased premises.”[10]
A bond for deed contract is defined as “a contract to sell real property, in which the purchase price is to be paid by the buyer to the seller in installments and in which the seller after payment of a stipulated sum agrees to deliver title to the buyer.” La. R.S. 9:2941.[11] As this Court has made clear, it is the nature, rather than the parties’ characterization, of a contract which governs whether it is considered a bond for deed contract. See Bertholot, 02-2054, pp. 3-4, 866 So.2d 877, 880.
The Agreement in this matter, while appearing to have certain characteristics of a bond for deed contract, fails to meet the requirement that title transfers with the last payment by the buyer, which is fundamental to a bond for deed contract. See Bradstreet v. Kinchen, 08-0126, p. 7 (La.App. 4 Cir. 4/1/09), 10 So.3d 331, 336 (“a bond for deed absolutely obligates the seller to deliver title to the buyer after payment of a specific sum.... In this case, [defendant] was not automatically obligated to transfer title to the property after the required payments.”); Solet v. Brooks, 09-0568, p. 5 (La.App. 1 Cir. 12/16/09), 30 So.3d 96, 99-100 (“[h]ad [the |9contract] provided that after all of the installments were received, an act of sale conveying title to [defendant] would be passed, the Agreement could be characterized as a bond for deed contract.”). Here, while the Agreement notes that the “rent payments” *933 go toward “ownership and title transfer of the estate,” the Agreement is silent with respect to the actual transfer of title. Accordingly, it does not meet the definition of a bond for deed contract. See 1 La. Prac. Real Est. § 11:50 (2d ed.) (“A bond for deed contract must ... contain a provision that the seller, for the stipulated sum, agrees to deliver title to the buyer. Hines v. Dance, 460 So.2d 1152 (La.App. 2 Cir. 1984). In the absence of such a provision, the parties will have executed either a contract to sell or completed contract of sale depending upon their intent, but not a bond for deed.”).
The problem with which we are faced is to determine the true nature of the Agreement, as it contains many irregularities. The trial court, in ordering the Browns’ eviction, made no such determination. The first paragraph of the Agreement expressly states that Mr. Keyes “agrees to sell” the property to the Browns, clearly evidencing an intent to sell. Though the Agreement is entitled “Rent-to-Own Purchase Agreement,” it is not a lease agreement with an option to purchase. “In a lease with an option to purchase, the potential buyer has the option to give additional consideration in order to purchase the leased item at the end of the contract term.” Bayou Fleet P’ship v. Phillip Family, LLC, 07-581, p. 4 (La. App. 5 Cir. 2/6/08), 976 So.2d 794, 796, citing Bamma Leasing Co., Inc. v. Secretary of Dept, of Revenue and Taxation, 93-881, pp. 4-5 (La.App. 5 Cir. 9/14/94), 646 So.2d 917, 920; Hewitt v. Safeway Insurance Company of Louisiana, |in 01-0115, pp. 5-6 (La.App. 3 Cir. 6/6/01), 787 So.2d 1182, 1186. As the Bayou Fleet court indicated, “[a]n option is a binding offer for a stipulated time which, when accepted, ripens into an agreement to sell which may be specifically enforced by either party.” Id., 07-581, p. 5, 976 So.2d at 796-97.
Nor is the Agreement an option to buy or to sell, which is defined by La. C.C. art. 2620, as “a contract whereby a party gives to another the right to accept an offer to sell, or to buy, a thing within a stipulated time.” That article further provides that the option “must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.” This Court has recognized that an option to buy must “ ‘be evidenced by a written instrument’ but the unqualified acceptance thereof [must] be evidenced in writing, giving full recognition to and in accordance with the terms and conditions of the proposal, and formally exercised and tendered to the proposer prior to the expiration date of the stipulated time.” Major Commodity Corp. v. Cunningham, 555 So.2d 525, 527-28 (La.App. 4 Cir.1989) (citations omitted.). None of these criteria are found in the Agreement.
While the Agreement makes note that “[r]ent payments” were to be made by the Browns, given the parties’ intent for the property to be purchased, the designation of the payments as “rent” does not alter the true purpose of the Agreement — for Mr. Keyes to sell the property to the Browns. The Agreement is also not a lease, as that is defined as a “synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay.” La. C.C. art. 2668.
We find that the Agreement closest to that contained in Hines, which involved a contract that simply stated:
| n“Vendor agrees to sell, and' vendee agrees to buy ... upon the terms and conditions hereafter recited, the following property ...
“Lot 12, etc....
*934 “The consideration ... is ... $6,500, with ... interest from date, payable in monthly installments of $65 each ... applying in the order following:
“1/2 of a sufficient amount to cover annual taxes and hazard insurance ... “Interest ...
“... [P]rincipal ... ,
“Upon default ... vendor shall have the right to cancel ... this contract, and retain all payments made as liquidated damages ...
“There shall be maintained ... hazard insurance ... in vendor’s name.
“Vendee will keep the improvements ... in good repair ...”
Id, 460 So.2d at 1154.
While Hines dealt with the propriety of a tax sale, its discussion of the nature of the contract at issue is important for our purposes. After first determining that the contract is not a bond for deed — given that it did not “comply with the statutory provisions which require the contract to contain a provision to the effect that seller, after receiving payment of a stipulated sum, agrees to deliver title to the buyer” — the Second Circuit found the contract to be “at best ... ambiguous.” Id. It then found no error in the trial court’s judgment finding the contract to be “a credit sale with some security provision for the vendor.” Id. The court stated:
A contract of sale is complete when the parties concur on three circumstances: the thing sold, the price, and the consent. La. CC Art. 2456. The conclusion that this instrument should be construed as a credit sale with some 112security provision for the vendor is not clearly wrong. The vendee-debtor was paying first the taxes, then insurance, then interest, and finally principal each month to the vendor-creditor, apparently to assure the vendor-creditor that sufficient funds would be available to pay taxes and insurance as they became due and in whatever amount was owed from time to time. This does not create an uncertainty in the price of the thing, but indicates a security device similar to that which is contained in conventional vendor’s lien-credit sales in private and in commercial transactions. Similarly, vendee’s obligation to keep the improvements in good repair at vendee’s expense protects the vendor’s security interest. The remaining part of this paragraph, that vendee advise “vendor in advance of such improvements,” adds to the ambiguity of the instrument, but does not negate or refute vendee’s obligation to maintain the improvements or indicate that the vendor retained ownership or title to the lot and the improvements.
Id, 460 So.2d at 1154-55.
In the present matter, the Agreement is ambiguous at best as it is deficient on most respects and lacks the elements of a nominate contract. The Browns agreed to pay $750 each month toward the ownership and transfer of title to the property. The Browns were also required to purchase homeowners insurance in the name of the Estate of Christine C. Keyes, seemingly to guarantee Mr. Keyes, as the vendor-creditor, some protection in the instance something should happen during the length of the parties’ arrangement. Likewise, the Browns had an obligation to maintain the condition of the property and its improvements, in the manner contemplated by the Agreement, at the Browns’ expense. This provision of the Agreement suggests Mr. Keyes’ intent to protect his security interest. Given the obligations set forth in the Agreement and the court’s analysis in Hines, we find the Agreement in the present matter to be similar to a credit sale with owner-financing.
| ^Having determined that the Agreement is akin to a credit sale with owner- *935 financing, we now turn to the effect of Appellants’ admitted failure to timely make payments under the Agreement or to ever pay the required $25 late fees. In Montz, the First Circuit felt' it unnecessary to define the precise nature of the contract at issue, noting that “[w]hether the distinguishing facets of this ‘innomi-nate contract’ as compared to a Bond for Deed contract served these purposes is not the subject of [the court’s] inquiry.” Montz, 01-0768, p. 13, 818 So.2d at 190. It further noted that “the designation of the type contract [is not] a compelling matter.” Id. Rather, the focus of the inquiry was an evaluation of “the consequences that flow from default.” Id., 01-0768, p. 12, 818 So.2d at 190. To answer that question, the court considered that “[t]he parties at inception voluntarily participated in a contractual arrangement for their own purposes.” Id., 01-0768, p. 13, 818 So.2d at 190.
As in Montz, the parties to the Agreement in the instant matter voluntarily entered into a contract for their own purposes, despite its imperfection and lack of clarity. While the Agreement is deficient in setting forth detailed terms of the consequences of default, it expressly states that, if “rent” was not timely received by Mr. Keyes or if the $25 penalty was not timely paid, “eviction proceedings will ensue.” We agree with the Montz court that, in this particular situation, “[regardless of how the transaction is characterized, [Mr. Keyes] had a right to regain possession of the property upon the buyer’s default.” Id., 01-0768, p. 14, 818 So.2d at 191.
We further find that Appellants were not entitled to a forty-five day curative period under the bond for deed statute. Nor are the proceedings for evicting a lessee applicable, as the Agreement is not a lease. We are left, then, with the terms of the Agreement which provide that, if “rent” and the $25 penalty are “not | , ¿received by the following month [from which they were due] eviction proceeding[s] will ensue.” The Browns admitted that their “rent” payments were always late and also admitted that they never paid the $25 penalties for late payments, both of which violate the Agreement. We find, therefore, that the trial court’s judgment of eviction was proper under the circumstances. We likewise find no error on the trial court’s ordering the Browns to pay “rent” for the months of April and May, as those were months that the Browns continued to live at the property after the eviction proceedings commenced. The trial court’s judgment is therefore affirmed.
Mr. Keyes, in his appellate brief, contests the trial court’s failure to award damages for an “estate vehicle ... caused to be towed,” damages to the property, and theft of a washing machine and dryer. Those issues are not properly before this Court. An appellant who wishes to appeal any portion of a judgment must either file and appeal, or answer an appeal pursuant to La. C.C.P. art. 2133, which provides, in pertinent part, as follows:
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.
La. C.C.P. art. 2133 A.
' In this case, Mr. Keyes neither appealed the trial court judgment nor filed an an *936 swer to the appeal. Accordingly, the issues raised in his appellate brief are not considered. See, e.g., Sears, Roebuck & Co. v. Appel, 598 So.2d 582, 584 (La.App.16 4 Cir.1992)(“[a]lthough an appellee may be entitled to an award, no assessment of damages or attorney fees can be considered where the appellee neither appealed or answered appellant’s appeal. A brief submitted by the appellee does not satisfy the requirement of La.C.C.P. art. 2183”) (citations omitted); Roberts v. Robicheaux, 04-1405, p. 4 (La.App. 3 Cir. 3/2/05), 896 So.2d 1232, 1235 (“a[n] appellee shall answer an appeal when he desires to have the judgment modified, revised, or reversed in part, or when he demands damages against the appellant. La.Code Civ.P. art. 2133. The Appellee’s ‘Answer Brief does not satisfy the requirements of Art. 2133 as it is neither an answer nor an appeal.”) (citation omitted.).
CONCLUSION
For the reasons discussed herein, the judgment of the trial court is affirmed.
AFFIRMED.

. Article 1914 defines “nominate contracts” as "those given a special designation such as sale, lease, loan or insurance.” "Innominate contracts,” on the other hand, are “those with no special designation.” Id.

. The lawsuit does not contain any facts setting forth Mr. Keyes’ capacity as the "Executor.” or his ownership interest in the property at issue; however, no one has challenged his authority to have entered into any contractual agreements pertaining to the property.

. The Agreement is silent as to the payment of property taxes.

. Additionally, certain items of furniture and appliances were included in the Agreement and would be owned by the Browns at the end of the Agreement’s term. Mr. Keyes made allegations regarding the Browns' failure to abide by some of these conditions (and further alleged the theft of some of these items); however, nothing was offered at trial to substantiate any of these claims and these items are not a part of this appeal.

. The Agreement makes no mention of a vehicle and the pleading filed by Mr. Keyes likewise makes no allegation regarding a vehicle, other than to pray for its return.

. Also attached to the rule to show cause was a copy of a photograph of the placing of the notice on the Browns’ door. The notice simply states: "Five day eviction notice is served on occupants ... This day of April 1, 2014.”

. While the transcript reflects that copies of these payments were introduced into evidence at the proceeding, they are not part of the record before this Court; the record does not include any exhibits offered at trial other than the Agreement.

. The record does not contain any information regarding an April, 2014 hearing. It does contain a transcript from a May 9, 2014 court appearance, which was attached to Mr. Keyes’ "Opening Brief.” It contains no information regarding the Agreement or the eviction matter.

. On June 19, 2014, Mr. Keyes filed another motion entitled "Motion to [Amend] Judgment” in which he complains of the Browns having stolen certain items from the property (of which he notified the police department) and having left the property "in shambles" with "spray painted graffiti all over the brick veneer.” The Motion, seeking to amend the judgment so as to require the Browns to return the property, was denied by the trial court on June 27, 2014. A motion to reconsider this denial was also denied on July 8, 2014.

. Mr. Keyes also seems to contend that the Browns abandoned the property and he took possession "after delay of sixty days." The record does not support the contention that the property was abandoned; rather, the record clearly shows that the trial court ordered the Browns evicted from the property.

. Under the bond for deed statute, there are also "a number of particular directives the seller must comply with in the transaction including a guarantee to the purchaser from any mortgage holder that it will release the mortgage when it is paid in full, a method for cancellation of the contract in the event of non-payment by the purchaser, and appointment of a bank to receive payments from the purchaser.” Berthelot, 02-2054, pp. 3-4, 866 So.2d at 880, citing Montz, 01-0768, p. 8, 818 So.2d at 187.