STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

11-1000

STATE OF LOUISIANA

VERSUS

TROY LEE MUNDY

**********

APPEAL FROM THE ELEVENTH JUDICIAL
DISTRICT COURT PARISH OF SABINE, NO. 63773
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese,
and Shannon J. Gremillion, Judges.

AFFIRMED.

Don M. Burkett
District Attorney for the Eleventh Judicial District
Anna L. Garcie, Assistant District Attorney
Post Office Box 1557
Many, Louisiana 71449
(318) 256-6246
COUNSEL FOR APPELLEE:
    State of Louisiana

**George Lewis Higgins, III**
**Higgins Law Office**
**Post Office Box 3370**
**Pineville, Louisiana 71361-3370**
**(318) 473-4250**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Troy Lee Mundy**

**GENOVESE, Judge.**

In this criminal case, Defendant, Troy Lee Mundy, appeals his second degree murder conviction, alleging that the trial court erred in denying his motion to suppress, in denying his motion in limine relative to other crimes evidence, and in not giving a limited jury instruction as to the proper usage of other crimes evidence. For the following reasons, we find no error by the trial court and affirm Defendant's conviction in its entirety.

## FACTS AND PROCEDURAL HISTORY

On May 7, 2007, William Wayne Meshell (the victim) was struck repeatedly in the back of his head while fishing on the bank of Toledo Bend Lake near the Pendleton Bridge in Sabine Parish. He was found dead, face down in the water, with his pockets turned out and his fishing equipment missing. Several witnesses identified Defendant as having been in the area and driving a distinctive, green pickup truck. After a routine traffic stop on May 9, 2007, in Bienville Parish, Defendant was arrested when a license plate check on the vehicle he was driving listed that vehicle as being stolen. Upon further investigation, Defendant was charged with the murder of Mr. Meshell.

Defendant was indicted on October 4, 2007, for the first degree murder of Mr. Meshell. The charge was later amended, alleging Defendant committed the second degree murder of Mr. Meshell with the specific intent to kill or inflict great bodily harm.

On November 30, 2009, Defendant filed a motion to suppress evidence seized in the traffic stop of May 9, 2007, that led to his arrest and the subsequent murder charge. The trial court denied the motion, without reasons, on March 1, 2010. Defendant then filed a motion in limine on April 27, 2010, seeking to limit the State's evidence that suggested Defendant was "a hardened criminal with an

extensive criminal background" and to prohibit mention of any previous criminal convictions or pending criminal indictments.

On June 3, 2010, the State filed a notice pursuant to La.Code Evid. art. 404(B) informing Defendant it intended to admit evidence at trial of Defendant's unauthorized use of the vehicle, the May 5, 2007 murder of Harvey Pickering in Rapides Parish, and an aggravated assault against a public servant in Texas. The identified purpose of the evidence was "to show proof of [D]efendant's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident regarding the offenses" and also to show Mr. Pickering's murder was "part of a system of crimes committed" by Defendant. Defendant filed another motion in limine on June 21, 2010, seeking to limit reference to these criminal charges. The trial court also denied this motion.

After a trial by jury, on March 9, 2011, Defendant was found guilty of the second degree murder of Mr. Meshell. On appeal, Defendant presents the following three assignments of error.

## ASSIGNMENTS OF ERROR

### Assignment of Error No. 1

The Trial Court erred in denying the [D]efendant's Motion to Suppress in that it allowed the evidence from the illegal arrest of the [D]efendant to be introduced into trial.

### Assignment of Error No. 2

The Trial Court erred in not granting Defendant's Motion in Limine in that it allowed improper other crimes evidence to be introduced.

### Assignment of Error No. 3

The Trial Court erred in not including a limiting instruction in the jury charge as to the proper usage of other crimes evidence.

2

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no actionable errors patent.

## DISCUSSION OF THE RECORD

On May 9, 2007, Trooper Matt Jones of the Louisiana State Police came upon a truck stopped on the shoulder of Louisiana Highway 151 in Bienville Parish. Defendant was putting gas in the truck, and Trooper Jones stopped to offer assistance. Defendant "mumbled something" and "quickly took his gas can and put it in the back of the truck." Trooper Jones "noticed there was still a pretty good bit of gas left in the gas can," but Defendant seemed "ready to go, get out of there."

Defendant then got in the truck and proceeded to leave. As Trooper Jones began to leave, he ran a check on the license number of Defendant's truck and "got an [sic] NCIC hit" saying the vehicle had been reported stolen.[1] The NCIC report indicated Defendant might be driving the vehicle and was "possibly wanted for murder." Trooper Jones followed the truck to a gas station in Arcadia and contacted the Bienville Parish Sheriff's Office. Defendant was arrested without incident, and his vehicle was secured with evidence tape on the doors and windows.

The Rapides Parish Sheriff's Office contacted Trooper Jones and "wanted to make sure that [Defendant's] clothes were secured for evidence." Trooper Jones recalled Defendant's pants had a lot of blood on them "from the knee down." The clothes were seized and transferred to the Rapides Parish Sheriff's Office as was the vehicle.

---

[1]NCIC is an acronym for National Crime Investigation Center.

DNA samples taken from Defendant's clothing matched the DNA from a blood sample of the victim, Mr. Meshell. Additional DNA from Mr. Meshell was identified on the head of a ratchet jack handle found in the bed of Defendant's truck. An autopsy determined that Mr. Meshell died from blunt force trauma, and the dimensions of one injury were consistent with the dimensions of the ratchet jack handle.

Sabine Parish law enforcement had been investigating Mr. Meshell's homicide for two or three days at the time Defendant was stopped. Information released through news media brought telephone calls from people who recognized Defendant or his vehicle. On the night of the murder, a vehicle matching the description of Defendant's vehicle rammed a San Augustine, Texas, police officer's car. During the incident, the suspect's cap fell into the street. Subsequent crime lab tests identified Mr. Meshell's DNA on the cap.

After "everything settled down," Detective Jasper Bay of the Rapides Parish Sheriff's Office told Trooper Jones his department had a murder warrant for Defendant's arrest. Evidence at the hearing of the motion to suppress, however, indicated the warrant was not issued until after Trooper Jones arrested Defendant. Trooper Jones testified that the basis for the stop was the stolen vehicle report. Nothing at any of the hearings or at trial showed the origin of the alleged murder warrant on the NCIC report.

Defendant's mother, Thelma Mundy, testified at the hearing on the motion to suppress that the vehicle Defendant was driving at the time of the arrest was his vehicle, but that it was titled in her name. She stated that Defendant had "total permission" to use the truck.

On the Tuesday prior to Defendant's arrest, Ms. Mundy saw someone else operating the vehicle and mentioned it to Deputy Dale Whitstine, the brother of

Ms. Mundy's brother-in-law. The next morning, Deputy Whitstine brought Ms. Mundy a picture of Jason White and said White "had been in a lot of trouble." Ms. Mundy identified White as the person she had seen operating the vehicle. Deputy Whitstine said she "would have to put an unauthorized use of a motor vehicle against this boy" in order for him to talk to White. White told Deputy Whitstine that he was unaware the truck was not in Defendant's name. Ms. Mundy testified, "[E]veryone knew that it was [Defendant]'s truck."

Contrary to Deputy Whitstine's affidavit that provided the basis for the "bolo" (be on the lookout) on the truck, Ms. Mundy said that she did not have an ongoing problem with Defendant using the vehicle without authorization. She stated that she believed Deputy Whitstine knew the vehicle belonged to Defendant and that she only had a problem with someone else driving the truck because it was still in her name.

Deputy Whitstine's affidavit stated that Ms. Mundy said her son used her truck to get a chain saw and that he let White use the vehicle. Defendant was supposed to return the truck by five o'clock, but she had not seen him after that time. At the hearing on Defendant's motion to suppress, Ms. Mundy testified that the information in the affidavit was "not even true," that she never told Deputy Whitstine Defendant could not use the truck, and that Deputy Whitstine "knew that that truck was [Defendant]'s." When Ms. Mundy learned of a warrant a few days after the affidavit, she called the Sheriff's office and told them "[t]his was not meant for [Defendant] because that is [Defendant]'s truck." She "thought it was for Jason White."

At trial, Ms. Mundy again testified that she "did not request a warrant against [Defendant]." She stated that she spoke to Deputy Whitstine when she saw someone else driving the truck because she "did not want another person that [she]

5

did not know[,] and [Deputy Whitstine] told [her] this guy was breaking into houses and stuff[,] and the guy had something in the back of the truck." She believed what Deputy Whitstine told her about the identity of the man she saw driving the truck and his activities.

In contrast, Deputy Whitstine testified at trial about speaking to Ms. Mundy on May 1, 2007. She had called him to her house "and she said [Defendant] was avoiding her[,] and she wanted her truck back." She had let Defendant use the truck, but "[h]e was supposed to return the truck by 5:00 o'clock or call her."

By the next morning, Defendant had still not returned the truck. Deputy Whitstine spoke to Ms. Mundy again and took her a photo of White to see if she recognized him as the person she had seen in the truck on the prior day. "On May . . . [Deputy Whitstine and Ms. Mundy] decided that [he] would write up warrants for unauthorized use on [Defendant] and also Jason White[,] and [he] did so." Deputy Whitstine also placed the vehicle into the NCIC system. He testified that he and Ms. Mundy "had agreed that [he] would go ahead and make an arrest warrant out for both subjects that was [sic] in the truck."

**ASSIGNMENT OF ERROR NO. 1:**

Defendant argues that the trial court erred in denying his motion to suppress because the original information Deputy Whitstine placed into the NCIC, on which Trooper Jones relied, was erroneous.[2] He contends the "fellow officer doctrine" invalidates Trooper Jones's probable cause to arrest Defendant.

> The collective knowledge doctrine, or "fellow officer rule[,"] provides
> that in certain circumstances, several officers' observations can be
> aggregated to establish the probable cause needed for a warrantless
> search or seizure, or to obtain a search or arrest warrant under the

---

[2]Defendant also incorporates his memoranda in support of his motions to suppress and in limine into his appellate brief. Such a practice is not allowed; therefore, we will not consider any argument set forth in those earlier memoranda submitted to the trial court. Uniform Rules—Courts of Appeal, Rule 2─12.4; *Bennett v. Hughes*, 03-1727 (La.App. 4 Cir. 5/26/04), 876 So.2d 862, *writ denied*, 04-1599 (La. 6/30/04), 877 So.2d 122.

Fourth Amendment. The courts have applied this doctrine where teams of officers, central dispatches, police computer systems, police from other jurisdictions or agencies, and undercover officers have shared information leading to the establishment of probable cause.

Kimberly J. Winbush, *Application in State Narcotics Cases of Collective Knowledge Doctrine or Fellow Officers' Rule Under Fourth Amendment—Cocaine Cases*, 4 A.L.R.6th 599 (2005).

We find that the application of this doctrine does not call for reversal of the trial court's denial of Defendant's motion to suppress. "A trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent abuse of that discretion." *State v. Wilder*, 09-2322, p. 2 (La. 12/18/09), 24 So.3d 197, 198 (citing *State v. Lee,* 05–2098 (La. 1/16/08), 976 So.2d 109, *cert. denied,* 555 U.S. 824, 129 S.Ct. 143 (2008); *State v. Vessell,* 450 So.2d 938 (La.1984)). "The appellate court looks at the totality of the evidence presented at the hearing for the motion to suppress when reviewing a trial court's denial of the motion. *State v. Sherman*, 03-1198 (La.App. 3 Cir. 3/2/05), 896 So.2d 1194." *State v. Kinchen*, 11-9, p. 7 (La.App. 3 Cir. 6/8/11), 71 So.3d 344, 349 (quoting *State v. Moreau*, 05-544, p. 3 (La.App. 3 Cir. 12/30/05), 918 So.2d 598, 601).

Here, the trial court based its ruling on credibility and factual determinations. Although Ms. Mundy testified at the hearing and at trial that Defendant was authorized to use the truck as his own, Deputy Whitstine testified at trial that she agreed to make out an arrest warrant for unauthorized use of the truck. Ms. Mundy agreed she had authorized the charge, but she did not intend it to affect Defendant. Thus, the trial court could have reasonably found the NCIC entry was made in good faith.

Further, when that good faith information was made known and available to Trooper Jones, he had reasonable suspicion to further investigate, even if the NCIC entry had not included information about Defendant being wanted for murder. Defendant "quickly took his gas can and put it in the back of the truck" although the can still had "a pretty good bit of gas left" in it. Defendant "was real quick, he was ready to go, get out of there." Defendant's pants had a lot of blood on them "from the knee down." Hence, the NCIC information about the murder warrant, whether correct or incorrect, was not essential to further investigation which would have disclosed the same evidence.

Defendant failed to prove any justification for setting aside the trial court's findings, and he failed to show any abuse of the trial court's discretion. This assignment of error lacks merit.

**ASSIGNMENT OF ERROR NO. 2:**

Defendant argues that "[t]he Trial Court erred in not granting [his] [m]otion in [l]imine in that it allowed improper other crimes evidence to be introduced." Our review of the record shows the trial court never ruled on either of Defendant's two motions in limine concerning other crimes evidence. The first motion, filed on April 27, 2010, was the subject of the May 20, 2010 hearing. The minutes and transcript of that hearing, however, indicate that the trial court did not deny the motion. Rather, the State indicated it would be filing a notice advising Defendant of what it sought to introduce. The trial court ordered the State to identify other crimes evidence it intended to use within fourteen days. The State filed the notice on June 3, 2010.

Defendant filed a second motion in limine on June 21, 2010. At the hearing on June 24, 2010, after a short discussion, defense counsel suggested that the parties brief the issue. The State indicated it would file a video along with its brief.

8

The trial court ordered Defendant to submit any argument on these motions within thirty days and allowed the State fifteen days to respond. Thereafter, the matter would be deemed to have been submitted. We note that the record contains no activity or ruling concerning the motions after that point in time.

"A defendant waives all pending motions by permitting trial to proceed without raising the issue that his pretrial motions were neither heard nor ruled upon." *State v. Wilson*, 10-519, p. 6 (La.App. 5 Cir. 1/11/11), 59 So.3d 1259, 1263 (citing *State v. Fletcher,* 02–707 (La.App. 5 Cir. 12/30/02), 836 So.2d 557, *writ denied,* 03–409 (La. 10/10/03), 855 So.2d 334).

Additionally, at trial, several witnesses testified about the facts of the unauthorized use of a vehicle charge and the Rapides Parish murder charge. Defendant made no objection to any of this testimony. Thus, this court is presented with neither trial court rulings nor rulings on objections at trial to review. Ironically, defense counsel himself, during his cross-examination of Dr. Jessica Esparza, forensic DNA analyst at the North Louisiana Crime Lab, commented, in the presence of the jury, "[y]ou know [Defendant] murdered Harvey Pickering at Cleco Lake[,] and I thought that y'all would have his blood up here." Thus, this assignment of error presents nothing for this court to review.

**ASSIGNMENT OF ERROR NO. 3:**

Defendant further contends that the trial court erred by failing to instruct the jury about evidence concerning other crimes. The record, however, contains no indication Defendant ever requested such a jury instruction. Further, he had no objection to the jury instructions as written. Therefore, this assignment of error lacks merit.

## DISPOSITION

Defendant's conviction is affirmed.

**AFFIRMED.**